## GORHAM D. ABBOT *vs.* THE AMERICAN HARD RUBBER COMPANY, WILLIAM JUDSON and others.

Directors of a corporation are agents of the corporation to manage its affairs, and carry out the purpose and object of its formation, and not to inflict upon it political death. They are only authorized to do such things as are directly or impliedly directed or authorized by the charter.

The minority in a corporation are only bound by the acts of a majority when acting under the charter; and the corporators are only bound by the acts of the trustees and managers when their acts are conformable to the organic law of the corporation, its articles of association or charter.

When the acts are inconsistent with the object and purpose for which the body corporate was organized, they are void.

An act which, to all intents, terminates the corporation, by taking from it its power to fulfill the purposes of its organization, is not consistent with the purposes of its constitution, nor within the powers of its directors.

That which changes the nature and business of a corporation from that for which it was created, effectually destroys it for all the purposes for which it was formed. It is no longer the same corporation.

The directors of a corporation, as such, and without special authority for that purpose, have no power to make sale of any portion of its property which is essential for the transaction of its customary business.

An act of the directors which compels a corporation to change its business is no less invalid and repugnant to its charter than an act that makes the change directly.

The American Hard Rubber Company was organized to develop and bring into use the " hard rubber compound," to be manufactured under certain

Abbot *v.* American Hard Rubber Company.

patents obtained by G., in pursuance of agreements made between the company and the patentee. Between December, 1850, and February, 1860, mainly through the instrumentality of the plaintiff, the property and franchises of a previous company were acquired, the name of such corporation changed, more clearly to indicate the new purpose and object of the corporators; its capital largely increased; valuable and exclusive rights under the letters patent for making the hard compound of india rubber, including the right to make and vend and sell to others the right to make and vend the compound, and to use it, were secured to the company; and large additions were made to the real property and water privileges of the corporation, and extensive shops and manufactories were put in operation. All of which improvements and expenditures were made solely for the purpose of making the interests and rights under the letters patent available and profitable to the associates, by manufacturing and using the compound under the patents. And the real estate so acquired, and the buildings and machinery erected and constructed, adapted only to the manufacture of the hard rubber compound, and the making of the various articles to be made from it, were utterly valueless for other purposes, and were worth but little more than the materials of which they were composed. The plaintiff was a stockholder, and a creditor, of the company, to a large amount. He was also a trustee, or director. There were seven directors or trustees, in February, 1860, the plaintiff and four of the defendants being of the number — four being required to constitute a quorum. On the 3d of February, 1860, the said four defendants met as trustees, and resolved to sell to P. & K. all the personal property, tools, dies, machinery, fixtures, stock, and all the patent rights and privileges under the letters patent, belonging to the corporation, for $120,000, in the 12 notes of the purchasers for $10,000 each, payable one in each month, for twelve successive months. The resolution was carried into effect, and the sale consummated. The resolution was passed, and the sale effected, without the consent and against the wishes of the plaintiff, and against his protest and remonstrances. On the 13th of February, 1860, P. & K. and the other defendants associated themselves together and became incorporated under the name of " The American Hard Rubber Company," for the manufacture of articles composed of India rubber, &c. P. & K. immediately transferred to the new corporation, of which five of the defendants were trustees, all the property, rights and effects transferred to them, a few days before, by the old corporation.

*Held* that the transactions complained of, and the sale to P. & K., could not be permitted to stand; that the transfer was made without power, in the directors or trustees; and was a violation of the trust and confidence reposed in them; and that the plaintiff was entitled to a decree declaring the transfer to P. & K. fraudulent and void, to an injunction restraining the defendants from intermeddling with the property so transferred, and to a receiver to take possession thereof.

A person having a duty to perform for others cannot act, in the same matter,

Abbot *v.* American Hard Rubber Company.

for his own benefit. Hence a trustee cannot, directly or indirectly, by himself or through the agency of another, become the purchaser of the trust estate. Neither can he purchase an interest in property, and hold it for his own benefit, when in respect to such property he has a duty to perform, inconsistent with the character of a purchaser on his own account.

This rule of restriction upon the powers of a trustee invalidates every indirect, as it does every direct, transfer to himself, or for his benefit; and the intervention of a third person, as a means or channel, by and through whom the title is transferred from the *cestui que trust,* and eventually vested in the trustee, will not uphold the transaction and sustain the title of the latter.

If the circumstances clearly show that the two transfers constitute but one transaction, they will be treated as parts of a single transaction, together perfecting a transfer from the trustee *qua* trustee, to himself individually.

When the thing transferred does not rest in the possession of the first transferee, but is immediately by him passed over to the trustee, for his benefit, or to an association represented by him, in whole or in part, the law will hold it to be a violation of the trust.

The rights of *cestuis que trust* require, in such cases, that the law should presume that the intermediate taker of the property was but the agent and instrument of the trustee — a means of conveyance.

THIS was an appeal from an order made at a special term, continuing the injunction, and appointing a receiver, in the action. The action was brought by the plaintiff, a stockholder of the American Hard Rubber Company — a corporation created for manufacturing purposes under the laws of the state of Connecticut — on behalf of himself and of all other stockholders of said company, for the purpose of having a certain transfer of its property to Poppenhusen, Konig and Funcke, declared fraudulent and void; for an injunction to restrain the defendants from intermeddling with the property so transferred; and for a receiver to take possession thereof, under the direction of the court. The material facts are sufficiently set forth in the opinion of the court, on the appeal, and in the following opinion of the justice by whom the order appealed from was made, on disposing of such motion at the special term.

SUTHERLAND, J. " I think the sale and transfer by the four directors, Judson, Ropes, Norton and Henry B. Goodyear, to Poppenhusen, Konig and Funcke, of the entire prop-

erty of the company, except its real estate, with its machinery and fixtures, was void as to the plaintiff and such other stockholders as did not consent to or authorize the sale. I do not think that it appears that a majority of the stockholders did in fact authorize the sale; but had the sale been authorized by a majority of the stockholders, or by stockholders representing a majority of the stock, I think it would have been void as to the plaintiff and other stockholders not consenting to or authorizing it. In looking at this question as to the power and authority of the directors to make the sale and transfer, with or without the authority of a majority of the stockholders, so as to be valid as to, and bind the stockholders who did not consent, the company should be considered in this case, and as between these parties, as chartered and organized for the sole purpose and object of manufacturing goods or articles of India rubber, or of its patented compounds, under the Goodyear's patents.

The corporation, as originally organized, in May, 1852, with a capital of $25,000, composed of 1000 shares of $25 each, was called the Beacon Dam Company, and would appear to have been organized for the object and purpose of building and maintaining a water power on the Naugatuck river, in Connecticut, and for carrying on a manufacturing business generally. The name was subsequently changed to "American Hard Rubber Company," and in January, 1853, the capital stock was increased from 1000 shares of $25 each, to 4000 shares of $25 each; the plaintiff subscribing for and taking the 3000 additional shares, retaining 1000 of them, and distributing the other 2000 among different parties. This increase of capital stock took place solely with reference to the business of manufacturing India rubber goods under the Goodyear's patents, and all the stockholders agreed, from that time, to enter upon and prosecute exclusively the business of manufacturing articles of the patented compounds of India rubber; and from that time until the sale by the directors to Poppenhusen, Konig and Funcke, in February, 1860,

the manufacture and sale of such articles would appear to have been the only business of the company.

I think, therefore, that, as between these parties, and for the purposes of this decision, I must consider the sole and only object and purpose for which the company was organized, the business which it carried on, and which the directors who made the sale were elected to direct and manage, to have been the manufacturing and selling of goods or articles of India rubber, or of one or more of its compounds, under the Goodyear's patent. That being so, I think the sale in question was void as to the plaintiff and other stockholders not consenting, because its effect was, and must necessarily have been, to discontinue all business of the corporation; in effect, to dissolve it; and I must presume, on the conceded facts of this case, that the parties to the sale knew or anticipated that such would be the effect and consequences of the sale. The directors sell in one lump not only all the stock of the corporation, manufactured and unmanufactured, but all rights of the corporation under the patent to manufacture any more, and all its property of every description, except the water power and real estate, with its machinery and fixtures, in Connecticut, which they at the same time lease to Poppenhusen and Konig for one year; thus, by this sale, discontinuing or destroying all business of the corporation for a term at least; and by the sale of the patent rights or of the corporation's right to manufacture under the patent rights, for ever putting it out of his power, without repurchasing the right to do so, to further prosecute the only object, and purpose, and business, for which it had been organized and which it had prosecuted; and thus leaving the corporation a mere skeleton, with a name and perhaps legal technical existence by the statute book, but without real life, or business, or usefulness.

I do not think the directors, even with the consent of a majority of the stockholders, had a right as against stockholders not consenting, thus in effect to discontinue its exist-

ence and defeat the object of its organization. I must assume that these directors were chosen to manage the business of the corporation, not to destroy and end it. If the corporation was insolvent, it is presumed the laws of Connecticut had provided a mode of having it dissolved; if it had good cause to surrender up its franchises to the government, it is presumed the laws of the same state had also provided for that; but I cannot presume that the directors, or a majority of the stockholders of this corporation, by any laws of Connecticut, or otherwise, had a right thus, by a *voluntary* sale, to discontinue its existence, and in effect surrender its franchise, without consulting the government, or its creditors, and without the consent of a minority of its stockholders. To hold that the directors could thus discontinue, wind up and defeat the purpose, object and business for which the corporation was organized, even with the consent of a majority of the stockholders, so as to bind the minority not consenting, would in effect be depriving the minority, and every one of the minority, of their property without their consent. No doubt the principle that a majority must govern or control (in the absence of any special provision in the charter, or constitutional articles,) applies to corporations, and that the minority are bound by the acts of the majority, when those acts are within and according to the charter or constitutional articles of the corporation, *and not inconsistent with the object and purpose with which it was organized.* Such acts a stockholder consents to by becoming a member of the corporation, because he is presumed to know the law, and the rights of the majority by the law. But this democratic or representative principle does not apply to an act or acts of the majority, inconsistent with the continued existence of the corporation and the very object and purpose for which it was organized; nor does a stockholder consent to such acts by becoming a member, because the law does not justify them; and he cannot be presumed to have anticipated or thought

that such acts would ever be perpetrated or attempted by the majority.

I cite the following authorities as supporting or illustrating the principle on which I hold the sale in question void for want of authority, as to the plaintiff and other stockholders not consenting, assuming it to have been made by a majority of the stockholders : *Livingston* v. *Lynch,* (4 *John. Ch.* 573 ;) *Conro* v. *Port Henry Iron Company,* (12 *Barb.* 62, 63, *&c.;*) *Ward* v. *The Sea Ins, Co.,* (7 *Paige,* 294 ;) *Hartford and New Haven R. R. Co.* v. *Croswell,* (5 *Hill,* 384 ;) *In the matter of Niagara Ins. Co.,* (1 *Paige,* 259 ;) *Slee* v. *Bloom,* (19 *John.* 456 ;) *Robbins* v. *Clay,* (33 *Maine,* 132 ;) *Smith* v. *Smith,* (3 *Des.* [*S. C.*] *Ch. Rep.* 557 ;) *Kean* v. *Johnson,* (1 *Stock.* 401 ;) *New Orleans, Jackson and Gt. N. R. R. Co.* v. *Harris,* (27 *Miss. Rep.* 517 ;) *Hare* v. *Society of Attorneys,* (1 *Collyer,* 370 ;) *Bagshaw* v. *Eastern Co. R. R. Co.,* (7 *Hare's Ch.* 114 ;) *Bank of Com.* v. *Bank of Brest,* (*Harrington's Ch.* [*Mich.*] 106, 1011 ;) *Town* v. *Bank of River Raisin,* (2 *Doug.* [*Mich.*] 530 ;) *Angell & Ames on Corp.* §§ 499, 500, 391 *et seq.*

The sale and transfer in question was not, and did not purport to be, a sale of the property of the corporation for the benefit of its creditors. If the property was sold for its full value, the creditors would have a right to complain, for it was not a sale for money, but for promissory notes, payable at a future day, and although the notes may be good, and the makers abundantly responsible, yet the corporation or its directors had no right to compel the creditors to wait until the notes were paid.

In passing the resolution relied upon by the defendants as an authority, by a majority of the stockholders, to make the sale and transfer, it would appear that a majority of shares voted on were voted on by proxy. I must presume, in the absence of any thing to show the contrary, that these proxies were ordinary proxies, given with reference to the transaction of the ordinary legitimate business of the corporation, and

Abbot *v.* American Hard Rubber Company.

that they did not and could not authorize votes for so extraordinary a sale and transfer as the one in question. Hence the resolution cannot be said to have been, in fact, passed by a majority of the stockholders, and its passage can hardly be claimed as an authority by a majority.

A similar remark may be made as to the Connecticut statutes referred to by the counsel for the defendants, authorizing a majority of the stockholders to transact business, and not less than three directors to manage the affairs and business of the corporation; these statutes must be presumed to have been intended to apply to the ordinary and legitimate business and affairs of corporations, and not to so extraordinary a proceeding as the sale and transfer in question.

The purchasers cannot be considered *bona fide* purchasers for value without notice, for they did not give money or value, but their notes or promises to pay; and I must assume, from the conceded facts of this case, that they knew the purpose and object for which the corporation was organized, and the only business which it had prosecuted; and as they must also be presumed to know the law, I must assume that they knew that directors, with or without the consent of a majority of the stockholders, had no right or authority to make the sale and transfer in question to them.

It is not necessary to pass upon the other two grounds upon which the counsel for the plaintiff insist that the sale was void, to wit, fraud in fact, and as being in contravention of the equitable principle or rule that a trustee cannot directly or indirectly become the purchaser of the trust property for his own benefit; for if the sale in question was void as to the plaintiff, and other stockholders not consenting, on the ground that it was made without their consent or authority, the other two grounds, however well taken, could not make a void thing valid.

The sale being void as to the plaintiff and other stockholders not consenting, it follows, I think, that the temporary injunction should be continued; and that a receiver is

necessary to preserve the property of the corporation within the jurisdiction of the court, for its creditors and stockholders, until the final decree in this action, or in the action in the circuit court of the United States, in aid of which it would appear that this action was brought, or until its dissolution may be decreed by the courts of Connecticut.

I shall accordingly continue the injunction, and make a reference to the Hon. William Mitchell to appoint a suitable and proper person as receiver, with the usual powers, and take and approve of the necessary and usual security for the faithful performance of his trust."

*S. A. Foote,* for the appellants.

*E. W. Stoughton,* for the respondent.

*By the Court,* ALLEN, J. The history of the origin, rise and progress of "The American Hard Rubber Company," and of the connection of the plaintiff with it, and of his dealings with and relations to the Goodyears and his other associates in the corporation, and the several patents referred to, is curious and instructive. The facts alleged are all important as bearing upon a question of fraud in fact involved in the case, and which will have to be met, unless the case upon a final hearing shall be disposed of upon the legal questions presented upon the indisputed facts. But upon this appeal, in the view I take of the legal rights of the parties, it will not be necessary to consider the question of actual fraud, and therefore I am relieved from the necessity of examining very critically the various and somewhat complicated and multifarious transactions stated with great detail in the complaint and answer. A very brief statement will suffice to present the questions which I deem essential to consider upon this appeal.

1. The "American Hard Rubber Company" of Connecticut, as distinguished from the "Beacon Dam Company," to

which it succeeded, was originated and established to develop and bring into use the "hard rubber compound," to be manufactured under the patents of the Goodyears, in pursuance of the several arrangements and agreements with the patentees, and with a view to the pecuniary benefit of the corporators.

2. Between December, 1850, and February, 1860, mainly through the instrumentality of the plaintiff, the property and corporate franchises of the "Beacon Dam Company" were acquired; the name of the corporation changed, more clearly to indicate the new purpose and object of the corporators; its capital increased from $25,000 to $300,000; valuable and exclusive rights under the letters patent for making the hard compound of India rubber, including the right to make and vend, and sell to others the right to make and vend the compound, and to use it for the different purposes, and in the manufacture of the various articles for which it is valuable, were secured to the company; large additions were made to the real property and water privileges of the corporation, and extensive manufactories and shops for making the compound and bringing it into use in every variety of form, and for every variety of purpose, with machinery adapted to the design, were erected and put in operation.

3. The rights and franchises were acquired, the capital stock of the corporation increased, the additional real estate purchased, and the manufactories erected, and other expensive improvements made, solely for the purpose of making the interests and rights under the letters patent available and profitable to the associates, by manufacturing and using the compound under the patents. Except as connected with the manufacturing and bringing into use the hard compound of India rubber, the increased capital cannot be employed, and would not have been subscribed; the real property is, so far as the case shows, comparatively valueless to the company, and not essential to the carrying into execution the original purposes and objects of the "Beacon Dam Company;" and

the buildings and machinery erected and constructed upon the property, adapted only to the manufacture of the hard rubber compound, and the making of the various articles to be made from it, are of necessity utterly valueless for other purposes, and are worth but little more than the materials of which they are composed.

In briefer terms, the increased capital, the additional real estate acquired, and the manufactories and machinery thereon, are valuable with the rights under the letters patent, but of comparatively little, if of any, value without such rights. Without the rights no prudent man would think of investing a dollar in the property and franchises, or looking after or caring for an investment already made, in the hope or expectation of getting any return from it.

4. At the time of the transaction complained of, the plaintiff was a stockholder in the company to the amount of $62,500, a creditor to the amount of $12,500, and under liabilities for the company to a large amount. He was also a trustee or director of the corporation, and had been from an early period in its history, if not from the commencement of the enterprise.

5. The direction of the company was, from June, 1855, committed to seven directors or trustees, of whom, in February, 1850, the plaintiff and the defendants Judson, Ropes, Norton and Henry B. Goodyear, were five, and by law it required four to constitute a quorum for the transaction of business. On the third day of February, 1860, the four defendants last named met as trustees at the office of Judson, in New York; but whether a meeting of the board of trustees had been adjourned to, or legally called, for that time and at that place, so as to give efficacy to their acts as a board, does not very satisfactorily appear from the allegations of the answer. The four trustees then resolved to sell to the firm of Poppenhusen & Konig, composed of the defendants Poppenhusen, Konig and Funcke, all the personal property, tools, dies, machinery, fixtures, stock manufactured

and unmanufactured, all the patent rights and privileges under the letters patent belonging to the corporation, together with the benefit of all contracts made with the corporation, for $120,000, to be settled for by the twelve notes of the purchasers of $10,000 each, payable one in each month for twelve successive months, and to lease the factory buildings and premises to the same parties for one year, at a rent of $3500.

6. On or after the ninth day of February, 1860, the resolution was carried into effect, and the sale consummated upon the terms mentioned.

7. The resolution was passed and the sale effected without the consent and against the wishes of the plaintiff, and against his protest and remonstrance. His objections were well known to his co-trustees, and there is reason to believe were also known to the purchasers before the consummation of the sale.

8. On the thirteenth day of February, 1860, the defendants Poppenhusen, Konig, Judson, Norton and Ropes associated themselves together, and became incorporated under the general laws of this state, under the name of "The American Hard Rubber Company," for the manufacture of articles, compounds, goods and substances, composed in whole or in part of India rubber, &c. &c.; that is, for the same purpose and under the same name as the Connecticut corporation named defendant in this action. The defendants last named were the five trustees named in the certificate of organization.

9. Poppenhusen & Konig immediately transferred to the new corporation all the property, rights and effects transferred to them a few days before by the old corporation.

Upon the undisputed facts of the case, thus fairly but imperfectly stated, the transactions complained of and the sale to Poppenhusen & Konig, cannot be permitted to stand. A bare statement of the case shows as conclusively as an elaborate argument could establish it, that the transfer was with-

out power, and a violation of the trust and confidence reposed in the trustees and directors of the corporation.

1. It was *ultra vires.* It would be strong evidence of fraudulent intent, under the circumstances, that a bare quorum of the body should undertake, by their acts, so seriously and radically to affect the future of the company and the interests of the stockholders; but waiving that question, and conceding that their acts stand as the acts of the whole board, I am of the opinion they were invalid for want of power. By the transfer, if allowed to stand, although the corporation still remained in form, with property which might be applied to some lawful purpose, the existence of the corporation was nominal, its substance was taken from it, and its property was valueless; as a "Hard Rubber Company" it had no rights, no franchises, and no existence. Its very title was a misnomer and a false pretense. Its stockholders, who had invested largely for the manufacturing of the hard rubber compound, under patent rights transferred to and vested in the company, have, by the acts of their agents, been deprived of these valuable rights, and of all connection with the manufacturing of rubber; and it will hardly satisfy them or satisfy the law, to say that the name of the corporation is left to them, with a water power and real property which they can, if they so agree, apply to the making of shoe pegs or calico, or any manufactured article other than that for which, and for which only, they associated together. It needs no expert to testify that machinery and fixtures adapted to the manufacture of the hard rubber compound cannot, to any great extent, be used for any other purpose. No matter how we may refine in argument, the fact is patent, that "The American Hard Rubber Company" was as effectually wound up, and its affairs closed, as practically as could have been done by a dissolution of the company by legal process. In the event of a legal dissolution, the associates could reunite for some other purpose; so now, if this transfer stands, they can, if they can bring their minds together, engage in some

other lawful business within the general powers defined in the articles of association. But to do this, all must agree. And can a board of trustees at their option thus compel their principals, the corporators, to change their business and their investments ? I think not. Trustees cannot by their vote and their act, change the business of a corporation organized for the making of woolen or cotton goods, into a manufactory of articles entirely different, although the business of the company may be named in the charter, in terms sufficiently general to include the substituted business. If the trustees in this case, chosen to carry on and prosecute the business of the company, could, by a sale of the rights under which it was operating, disable the company from going on, as is here attempted, the same trustees could, without the assent of the stockholders, employ the corporate property in the wildest and most hopeless schemes. The immediate and necessary effect of the act was, to terminate the business and thus practically and effectually destroy the corporation. This they could not do. It is certain that the officers could not directly, and without the assent of the great body of the society, dissolve it; and a majority of the stockholders could not do it, against the dissent of the minority. (*Smith* v. *Smith*, 3 *Dev. S. C. Ch. R.* 557. *Ward* v. *The Society of Attorneys*, 1 *Collyer*, 370.) In the case last cited, the attempt was to surrender the charter, with the view of obtaining a new charter for an object different from that, for which the original charter had been granted; and a temporary injunction was granted. The attempt here, is to do by indirection, what was prohibited when attempted directly; for the answer here is, "True, we have disabled you from carrying out the original purpose of your association, but you may engage in any other business." Boards of directors are agents of the corporation to manage its affairs, and carry out the purpose and object of its formation, and not to inflict upon it political death. They are only authorized to do such things as are directly or impliedly directed or authorized by

the charter. (*Ang. & Ames on Corp.* § 280.) The minority in a corporation are only bound by the acts of a majority when acting under the charter, and the corporators are only bound by the acts of trustees and managers when their acts are conformable to the organic law of the corporation, its articles of association or charter. When the acts are inconsistent with the object and purpose for which the body corporate was organized, they are void. (*Ang. & Ames on Corp.* §§ 499, 500.) An act which, to all intents, terminates the corporation, by taking from it its power to fulfill the purposes of its organization, is not consistent with the purposes of its constitution. That which changes the nature and business of a corporation from that for which it was created, does effectually destroy it for all the purposes for which it was formed. It is no longer the same corporation. An act which compels a corporation to change its business, is no less invalid and repugnant to its charter than an act that directly makes the change. A similar act was styled by Judge Willard "An act of self-destruction which the law cannot tolerate." (*Conro* v. *Port Henry Iron Co.* 12 *Barb.* 64.) The chancellor held, in *Ward* v. *The Sea Ins. Co.* (7 *Paige,* 294,) "that the directors of a corporation could not, even with the consent of the stockholders, discontinue the corporate business and distribute the capital stock among the stockholders, unless expressly authorized by legislative act." It is true that this decision proceeds upon principles of public policy, but it throws light upon the question as to the power of directors, and the limitations upon their power. So Nelson, Ch. J. in *The Hartford and New Haven R. R. Co.* v. *Croswell,* (5 *Hill,* 383,) says, "the charter is the fundamental law of the association—the constitution which prescribes limits to the directors, officers, and agents of the company not only, but to the action of the body corporate itself, and no radical change or alteration can be made or allowed, by which new and additional objects are to be accomplished, or responsibilities incurred by the company, so as to bind

Abbot *v.* American Hard Rubber Company.

the individuals composing it, without their assent." *Robbins* v. *Clay*, (33 *Maine R.* 132,) is in point, and decides that the directors of a corporation, as such, and without special authority for that purpose, have no authority to make sale of any portion of its property, which is essential for the transaction of its customary business. So far as this case is authority, it is decisive of this appeal, and it is the judgment of a court of very high authority, and is well sustained by principle and by analogy. *Kean* v. *Johnson*, (1 *Stockton*, 401;) *Bagshaw* v. *Easton Co. Railway Co.*, (7 *Hare*, 114;) *Bank of Commerce* v. *Bank of Brest*, (*Harrington's Ch. R.* [*Mich.*] 101,) are strongly confirmatory of the decision in 33 *Maine R.*, and stand upon principles which condemn the transfer to Poppenhusen and Konig as unauthorized, and therefore void. The reasons of Judge Sutherland at special term are conclusive upon this point, and in them I fully concur.

2. The transfer was a violation of trust and an abuse of the power vested in the directors to manage the affairs of the company, for the benefit of the corporators. As before suggested, I do not propose to consider the question of fraudulent intent or fraud in fact, involved in the case.

No principle is better settled than that a person having a duty to perform for others cannot act in the same matter for his own benefit. A trustee cannot, directly or indirectly, by himself or through the agency of another, become the purchaser of the trust estate. Neither can he purchase an interest in property, and hold it for his own benefit, when, in respect to such property, he has a duty to perform, inconsistent with the character of a purchaser on his own account. (*Van Epps* v. *Van Epps*, 9 *Paige*, 237. *Hawley* v. *Cramer*, 4 *Cowen*, 717. *Slade* v. *Van Vechten*, 11 *Paige*, 21. *De Caters* v. *Le Ray de Chaumont*, 3 *id*. 178.) It requires no authority to establish the fact, that the directors of the " American Hard Rubber Company" could not have trans-

ferred the property of the corporation directly to themselves, or to a corporation in which they were stockholders and directors. That is, they could not act as buyers and sellers in the same transaction, whether they acted in their individual capacity, or as the directors of two trading corporations. (*New York Central Ins. Co. v. Nat. Prot. Ins. Co.* 20 *Barb.* 468.) This rule of restriction upon the powers of the trustee invalidates every indirect, as it does every direct, transfer to himself, or for his benefit; and the intervention of a third person, as a means or channel, by and through whom, the title is transferred from the *cestuis que trust*, and eventually vested in the trustee, will not uphold the transaction and sustain the title of the latter. Courts will look through the means to the end, and apply the proper remedy for the breach of trust. If the circumstances clearly show that the two transfers constitute but one transaction, they will be treated as parts of a single transaction, together perfecting a transfer from the trustee *qua* trustee to himself individually. When the thing transferred does not rest in the possession of the first transferee, but is immediately by him passed over to the trustee, for his benefit, or to an association represented by him, in whole or in part, the law will hold it to be a transfer in violation of the trust. The rights of *cestuis que trust* require in such cases that the law should presume that the intermediate taker of the property was but the agent and instrument of the trustee—a means of conveyance. The contrary of the presumption ought not to be proved, or even alleged. It would be unsafe to uphold a transfer under such circumstances, for the want of express proof of the actual intent of the parties, from the facts or upon their oath, that the repurchase of the trustee was an afterthought. When the title remains in the immediate grantee, but for a moment, or a very brief period of time, and is at once transferred to the trustee, or for his benefit, the presumption that the two transfers were only intended to effect the one object, that of conveying the property to or for the benefit of the trustee, is

Abbot *v.* American Hard Rubber Company.

as strong as is the malicious intent to kill from the deliberate
use of a deadly weapon.    This rule of law which makes cer-
tain cases of presumption conclusive, merely attaches itself
to the circumstances when proved—it is not deduced from
them.    It is not a rule of inference from testimony; but a
rule of protection as expedient for the public good. (*Greenl.
Ev.* 32.)    Here, the transfer to Poppenhusen and Konig, in
Connecticut, was at the latest on the 9th of February, and
on the 13th of the same month the new company was fully
organized in New York, and the property and rights conveyed
to Poppenhusen and Konig immediately transferred to it.
The transfer from the original American Hard Rubber Com-
pany, of which the plaintiff was a stockholder, to the new
company from which he is excluded, and in which three of
the four trustees and directors making the conveyance, with
Poppenhusen and Konig, are the sole corporators, was effected
without any loss of time, as soon as it could well have been
done, so that the transfer may be said to have been made by
Poppenhusen and Konig to the new company, immediately
on their receiving the title.    There were only two entire days,
exclusive of the Sunday intervening, for accomplishing the
whole thing.    It would be wrong to permit the presumption
of intent attaching to these circumstances to be overcome by
any amount of evidence.    If it could be, stockholders would
never be safe against the acts of faithless trustees.    If evi-
dence could prevail against the presumption, the affidavits
of the parties implicated are entirely insufficient and unsat-
isfactory.    But it is not necessary to comment upon them.
The experiment of the acting trustees in the two hard rubber
companies has the merit of boldness as well as originality.
Three of them marched out of the old company, laden with
spoils with which they enriched themselves as stockholders
of the new, and it cannot be that their wronged and injured
associates are remediless.    The plaintiff is entitled to the
relief demanded, and an injunction and receiver are necessary

to the preservation of the property, and the protection of his interests, *pendente lite*.

The order of the court made at the special term should be affirmed, with costs.

[NEW YORK GRNERAL TERM, February 4, 1861. *Clerke, Sutherland* and *Allen*, Justices.]