PLANT *et al. v.* MACON OIL & ICE COMPANY *et al.*

A private corporation has the power to temporarily rent its property to individuals for the purpose of raising money necessary to pay a pressing indebtedness which can not be otherwise met, when it appears that such a temporary disposition of its property is necessary for its protection, is entered into in good faith, and is to the interest of all the stockholders, and when it further appears that there is no purpose of the corporation to abandon its franchises or corporate powers, but on the contrary its manager, under the contract of rental, is to remain in charge of the property and look after the interest of the corporation during the term of the tenancy.

Argued February 5, — Decided March 23, 1898.

Petition for injunction. Before Judge Felton. Bibb county. December 17, 1897:

*Dessau, Bartlett & Ellis,* for plaintiffs.
*Estes & Jones,* for defendants.

Lewis, J. This was a petition filed by R. H. Plant and W. E. McCaw as minority stockholders of the Macon Oil & Ice Company, a corporation, against that company, E. N. Jelks, R. J. Taylor, and the Southern Phosphate Works, for an injunction to prevent the corporation from making or carrying into effect a lease of its property and franchises, which petitioners contended was ultra vires. The petition alleged, in substance, that the Macon Oil & Ice Company was about to consummate

a lease of all its property, powers and franchises, whereby the control of the same would pass completely from it and be lodged in some other person or corporation; that this intended lease was beyond the charter powers of the corporation; that under the charter it had the power to manufacture and sell oil of cottonseed and all other materials, to manufacture and sell ice, to conduct a refrigerator and cold-storage business, and to manufacture and sell guano and fertilizers, but that it had no power to lease or dispose of its corporate rights, powers, franchises or property, as it was about to do; that this contemplated action was a fraud upon the rights of petitioners and all other stockholders of the corporation. It further appeared from the petition, that the contemplated lease, if consummated, would be the result of the action of the majority, if not all, of the board of directors of the corporation, and would be in accordance with the wishes of those owning a majority of its stock. There were other allegations in the petition, charging fraudulent management of the affairs of the corporation by those in control of the same; but it is unnecessary to set forth these allegations in detail, as there was no testimony to support them, and the injunction prayed for was not insisted upon except on the ground that the contemplated lease by the company was in the exercise of a power not conferred by the charter, and was therefore void. Attached to the petition was a copy of the order of court incorporating the Macon Oil & Ice Company, and the application therefor. The charter provided that the corporation be authorized "to carry on in its corporate name the manufacture and sale of oils of any and all kinds, from cottonseed and all other materials, and to sell the same in any quantity, either at wholesale or retail, in any and all markets and places, and to manufacture ice and sell the same, in any quantities, to consumers, in any market or place; to establish [and] conduct the refrigerating and cold-storage business in all its branches, with the right to take in storage, and charge therefor, such goods, wares, and merchandise as may be offered; to rent out space, and privileges therefor, and to furnish cold storage and refrigeration, either at their place of business or elsewhere, and to charge therefor; to manufacture and sell

guano and fertilizers from any and all materials suitable for the purpose, in any quantities; to establish agencies and appoint agents, and to establish a branch or branches of any of its said business in any and all places, for the sale and disposition of any of the above-named products, as they may deem best for the interest of said corporation; to acquire by purchase or otherwise, and to sell, such real estate, personal property, and patent rights, and at such places, as may be deemed necessary to the successful conduct of its said business in all its branches; to sue and be sued; to contract and be contracted with in its corporate name; to have and use a common seal; to adopt such constitution, by-laws, etc., as may be deemed necessary and proper for the conduct of the said business; to elect such officers as it may deem necessary, and prescribe their powers, duties and terms of office, with power to hold meetings of the board of directors of said corporation, either within or without this State, as may be determined by said board of directors, and to have all the rights, powers and privileges accorded to like corporations by law, as may be necessary in its operations, not inconsistent with law, and usually incident to such corporations."

The Macon Oil & Ice Company answered, denying the material allegations of the petition, and alleging that the truth of the transaction complained of was as follows: The officers and agents of the company had rented to E. N. Jelks and R. J. Taylor, and not to the Southern Phosphate Works, for the term of one year, beginning October 1, 1897, the property of the company, for $2,500, payable quarterly in advance in four payments of $625 each; and in addition to this rental, the tenants were to pay all taxes on the property for the year 1898, and the ground-rent due by the company to the Central Railroad, amounting to $131.86 per quarter, and were to return the property at the end of the year in the same condition as when received, usual wear and tear excepted, giving bond for the faithful performance of the contract. That the above was the entire transaction, and had been consummated between the parties before the filing of the suit. The application and order incorporating the Macon Oil & Ice Company on the hearing was intro-

duced in evidence by the plaintiffs; also its constitution and by-laws, from which it appeared that the board of directors had supervision of all the affairs of the company. Plaintiffs further proved that the property which the defendant company claimed to have leased was all of its property; also proved that they were stockholders in the company, one to the amount of $5,400, and the other to the amount of $5,000. The defendants introduced testimony showing the rental of certain property belonging to the Macon Oil & Ice Company to Messrs. Jelks & Taylor for the space of a year, as alleged in their answer. Also testimony to the effect that at the time of this rental there were sundry claims against the corporation, which had begun to mature; that the manager of the company was continually pressed for their payment, without any ability to satisfy the demands; that amongst the claims demanding payment was one for ground-rent due the Central Railroad, which claim was very vigorously pressed by the attorneys for the road, who threatened to distrain; that under these circumstances it was absolutely impossible to profitably run the mill, and in consequence of these conditions a temporary rental of the property was made, in order to secure money with which the pressing claims against the company could be liquidated, which rental was upon terms exceedingly profitable to all the shareholders; that this arrangement was made solely for the purpose of relieving the company of temporary embarrassment; that the manager of the company, who held this position prior to the lease, was to remain at the company's office, supervise its property, and look after its interests, while at the same time he was being paid for his services by Jelks & Taylor; that he was to continue in this service by virtue of his office as manager of the company during the term of rental; that the property, under this rental, was being used for the purposes and business of the corporation; that it was realizing an income from the rental directly in keeping with the business and purpose of the company's creation under its charter, to wit, for the manufacture and sale of cottonseed oil, etc.; and that at the expiration of the term of rental, the temporary use and occupancy of said property by Jelks & Taylor would cease, and it would be re-

turned in the same condition as when received.   It was further testified, in behalf of the corporation, that in making the one year's lease to Jelks & Taylor, it was not the purpose of the company to part with its supervision and dominion over its property, but simply to get moneys out of the use of the property as an emergency or provisionary measure.   The court, after hearing the evidence, refused an injunction, holding that the contract in question was not ultra vires, and that, under the testimony, the contract of rental was necessary for the purpose of raising money, and preserving the franchises of the corporation.   To this the petitioners excepted.

It was contended by counsel for the plaintiffs, that the enumeration of the powers granted to this corporation by the order of the judge of the superior court excluded the exercise of all powers not conferred by its charter; that the order of incorporation did not include the power to lease the entire plant of the corporation, or, in other words, to go out of business as a manufacturing concern.   The general doctrine that the powers of a corporation, whether public or private, are such only as are conferred by its charter, either expressly or by fair implication, is too well settled to require discussion.   The question, however, whether a private corporation, unless expressly restrained by statute, has an unlimited power of alienating or leasing its property is one upon which the authorities do not apparently agree.   A distinction must be drawn between the powers of a public corporation and those of a private corporation in this particular.   Our attention has been called to the cases of Thomas v. Railroad Company, 101 U. S. 71, and Pa. R. R. Co. v. St. Louis etc. R. R. Co., 118 U. S. 290, in which that court ruled that a railroad company, unless specially authorized by its charter, or aided by some other legislative action, can not, by lease or other contract, for a long period of time, turn over to another company its appurtenances, franchises and powers.   In Reese on Ultra Vires, § 137, it is stated: "This rule is based upon the theory that public or quasi-public corporations, which possess and exercise the right of eminent domain or its equivalent, owe duties to the public as well as to their stockholders; and they can not sell or lease their corpo-

rate powers and privileges, and thereby disable themselves from performing their public duties, without legislative authority." The public, however, have no such interest in the franchises of a private corporation; and that rule can not, with the same force, be applied to an alienation made by the latter class. Taylor on Private Corporations, § 132. In the 4 Am. & Eng. Enc. L. 219, is this text: "Corporations, unless expressly restrained by statute, have an unlimited power of alienation like that of an individual; and since the greater power includes the less, they may lease property, which is but a partial or temporary alienation." In Treadwell v. Salisbury Mfg. Co., 7 Gray's Rep. 393, this right of alienation, in pursuance to the vote of a majority of the stockholders against the protest of the minority, was recognized. On page 404 of that case, the court said: "But we entertain no doubt of the right of a corporation, established solely for trading and manufacturing purposes, by a vote of the majority of their stockholders, to wind up their affairs and close their business, if in the exercise of a sound discretion they deem it expedient so to do. At common law, the right of corporations, acting by a majority of their stockholders, to sell their property is absolute, and is not limited as to objects, circumstances or quantity"; citing a number of authorities. On the other hand, respectable authority can be found denying this right of alienation to a private corporation, unless expressly conferred by its charter. Among the cases relied on by the plaintiff in support of this latter view is that of Cass v. Manchester Iron & Steel Co., 9 Fed. Rep. 640, in which the power of a private corporation to lease its plant was denied by the court. It appeared, however, in that case, that the board of directors exercised this power against the protest of the holders of a majority of the stock. It further does not appear in that case that there was any emergency or necessity calling for a lease of its property by the company. Reason as well as authority, we think, will sustain the position that neither a majority of stockholders nor the directors of a corporation as such, without special authority for that purpose, can generally do an act which, to all intents and purposes, terminates the corporation; that they could not, for instance, while the company was

in a prosperous condition, upon their own mere caprice, sell out the whole source of their emoluments and abandon their enterprise where a minority desire a prosecution of the business. Such is the effect of rulings in the cases of Kean *v.* Johnson, 9 N. J. Eq. Rep. 401; Abbot *v.* American Hard Rubber Co., 33 Barb. 578. These authorities, however, are based upon the idea of an abandonment of corporate franchises without any special necessity requiring such a course.

In Taylor on Private Corporations, 3d ed., § 130, it is declared that a corporation may alienate, or lease, a portion or even the whole of its property; and may assign its property in trust for the benefit of its creditors. The author further says, however, the proposition, that to accomplish the ends of its incorporation a corporation may deal with its property just as an individual, is too broad; and that a corporation can not alienate or assign its property regardless of the rights of its creditors, or of a dissenting minority of shareholders; and a corporation owing duties to the public can not, without special authority, alienate, lease, or mortgage its franchises, or do any act that may disable it from performing its public duties in the manner indicated by its constitution. In 1 Morawetz on Private Corporations, § 416, it is declared: "A transfer of the assets of a corporation by a sale, or a long lease in consideration of an annual rent, is unauthorized, although made in good faith for the purpose of closing out the company's business, unless provision be made for paying to dissenting shareholders the value of their shares in the whole property in cash." The plaintiffs in error cite as authority for their position the dissenting opinion of Justice Story in the case of Beaston *v.* Farmers' Bank, 12 Peters, 138, in which the learned Justice states that he exceedingly *doubts* "if any corporation, at least without the express assent of all the corporators, can rightfully dispose of all its property by such a general assignment, so as to render itself incapable in future of performing any of its corporate functions. That would be to say, that a majority of a corporation had a right to extinguish the corporation, by its own will, and at its own pleasure. I doubt that right; at least, *unless under very special circumstances.*" Even this dissenting opinion is pregnant with the

idea that circumstances may be of such a nature as would authorize such an alienation, even against the protest of a minority of the stockholders. In the case of Metropolitan Concert Co. *v.* Abbey, 52 N. Y. Super. Ct. 97, it was held that a lease by such a corporation of all its property was void, "*unless it be by reason of imperative necessity.*" In the case of Simpson *v.* Directors of the Westminster Palace Hotel Co., 8 H. L. Cas. 711, it was held that while the funds of a joint-stock company established for the purpose of one undertaking can not be applied to another, though sanctioned by all the directors, and by a large majority of the stockholders, yet, where the company was established for the erection and maintenance of a hotel, with power to do "all such things as are incidental or otherwise conducive to the attainment of the above objects," it was permissible for the company to lease a large portion of its property to the head of a government department for the business of his office, as such a letting was shown to be productive of advantage to the company, and that the arrangement was valid within the words of the clause above quoted. In the case of Hancock *v.* Holbrook, 9 Fed. Rep. 353, a conveyance by a private corporation, under authority of the board of directors whose action was ratified subsequently by all the stock represented at a meeting of the stockholders, was held to be valid as against other stockholders, in the absence of fraud, and when a longer continuance of the corporate business would be ruinous to all parties.

Upon a cursory glance at the authorities above cited, and a number of others we have investigated upon the subject, there would seem at first to be an irreconcilable conflict upon the powers and rights of a majority and a minority of stockholders in a private corporation, touching its authority to alienate or lease its property and franchises. But we think that nearly if not quite all of the authorities upon the subject can be reconciled, and that from a careful consideration of all of them together can be deduced the following principles, about which there seems to be very little, if any, conflict: 1st. While a public or quasi-public corporation can not, without express authority, convey or lease its property and privileges, *as a general rule*

·this can be done by a private corporation.   2d. But a private ·corporation, limited as to duration, while doing a successful business, can not sell out and abandon its enterprise, over the protest of a minority of its stockholders, who have the right to insist upon a continuance of its business.   3d. While a minority of stockholders have the right recognized in the paragraph just above, it can not compel a majority to continue *indefinitely* in the business of the corporation, provided a majority, in arrangements to discontinue the business, fully protect the interests of the minority by payment in full of the value of their shares, should it be demanded.   4th. A minority of stockholders can not compel a corporation, against the wishes of a majority of the owners of the stock therein, to continue a business that would be unprofitable or ruinous in its results to the interests of all concerned; hence it has been often held that an insolvent corporation has the right to make an assignment for the benefit of creditors, which right does not depend upon the assent of all its stockholders.   From these principles it follows as an inevitable conclusion, that a private corporation has the right temporarily to lease or rent its property, when the purpose of such action is not an abandonment of its franchises, but to meet an urgent necessity of raising a fund so as to enable it afterwards to conduct its business profitably, and to continue the enterprise for which it was created.   Especially is this the case where the managing officer of the corporation remains in charge of the property during this temporary rental.   The emergency for immediately raising money to meet urgent claims against the corporation in this case was clearly shown.   The trial judge was authorized in drawing the conclusion that there was no purpose on the part of the corporation of abandoning its enterprise or franchises; that, on the contrary, this temporary rental of its property was really necessary for its protection, and to enable the company to continue its business.   Its own manager still remains the manager of the property during the tenancy.   The rights of none interested in the company are jeopardized by this temporary arrangement.   To place it in the power of a minority of stockholders, simply by refusing acquiescence, to defeat a scheme looking to the protection of the

company's property and a continuation of its enterprise, might, under certain circumstances, clothe them with the authority of wrecking the company, and defeating the very objects of its corporate existence. It was argued by counsel for plaintiff in error, that a right to rent for one year would necessarily imply, at the expiration of the lease, the power to continue the rental for another year, and so on indefinitely, and thus would follow the power of entirely and permanently transferring the franchises of the company into the hands of another. The reply to this is, "Sufficient unto the day is the evil thereof." Should a scheme of this sort in the future be attempted without any necessity for such alienation, the plaintiffs could doubtless then have redress of their grievances. No such case is made by this record; and what we now rule is that, under the undisputed facts of this case, the judge properly exercised his discretion in refusing the injunction.

*Judgment affirmed. · All the Justices concurring.*