In the Matter of the Application of Walter S. Timmis, Respondent, for the Appraisal of His Stock in the Sackett & Wilhelms Company, Appellant.

Corporations — voluntary sale of independent department of business of stock corporation — must be made under and in compliance with section 16 of Stock Corporation Law — rights of stockholder who objects to sale.

The sale of the "business, assets and property," including the good will, of an independent and important department, or branch, of the business of a business corporation, organized under the laws of this state, for the reasons, among others, that the corporation lacked capital to carry on the department and that "the sale was a business necessity," is not a transaction within the ordinary course of business of the corporation. It is valid, only, when made under and in compliance with the provisions of section 16 of the Stock Corporation Law (Cons. Laws, chap. 59), authorizing the voluntary sale of the franchise and property of a corporation with the consent of two-thirds of its stockholders.

When such sale is made, a stockholder, who voted against the resolution authorizing the directors to make it, is entitled, under section 17 of the Stock Corporation Law, to an order for the appointment of three persons to appraise the value of his stock and directing the corporation to pay to him the value thereof as fixed by such appraisers.

Matter of Timmis, 139 App. Div. 936, affirmed.

(Argued November 16, 1910; decided December 6, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 29, 1910, which affirmed an order of Special Term directing an appraisal of the stock of the petitioner pursuant to section 17 of article 2 of the Stock Corporation Law.

12

The Sackett & Wilhelms Company is a domestic corporation organized to carry on the business of lithographing and printing. In August, 1909, at a meeting of its stockholders, held pursuant to notice, a resolution was adopted by the votes of the holders of more than two-thirds of the capital stock, authorizing the board of directors to "sell the good will, business, assets and property of what is known as its Calendar Department, the same being and constituting a separately conducted department of its business, upon such terms and for such consideration" as the directors should prescribe. The respondent, who owned forty shares of preferred stock and thirty-five of common, voted against the resolution, and within twenty days after the meeting served a notice objecting to the sale and demanding payment for his stock, "pursuant to the provisions of the Stock Corporation Law." As the demand was not complied with, upon a petition showing these facts among others, he moved at Special Term on due notice for the appointment of appraisers, and that he be paid for his stock the amount of the appraisal thereof, when made.

Upon the hearing before the Special Term it appeared that the business of the calendar department was to obtain orders and create a demand for calendars and other advertising specialties through traveling salesmen ; to secure designs and plates for the decoration thereof; to procure the same to be lithographed and printed by the regular department of the company, accounting for the work at current rates and to sell the same through its salesmen ; that it did no printing or lithographing ; that the sales of the calendar department, which has always been separately conducted and the accounts thereof separately kept, amounted to about one-thirteenth of the entire business of the corporation ; that the successful conduct of the department required the continued use of a large amount of capital which the corporation was unable to provide ; that the business, assets and good will comprised among other things pictures, plates, finished calendars, contracts with salesmen of calendars and the good will of buyers of calendars; that a corporation known as the Robert Chapman Company had been organized

with power to "acquire, as a going concern," the calendar business of the Sackett & Wilhelms Company and the terms of sale required the purchaser to give all the printing and lithographing to the parent company at current rates for the period of ten years ; that the purchase price was to be $20,000 in cash, all the common stock amounting to $150,000 and $60,000 of the entire issue of $300,000 of preferred stock.

The motion was granted, appraisers were appointed and the court further ordered that within ten days after their report "the said Sackett & Wilhelms Company pay in cash to the petitioner the value of his stock as estimated and certified by said appraisers and that thereupon the petitioner surrender the certificates for said shares to said company for cancellation." The corporation appealed from the order of the Special Term to the Appellate Division and from the order of affirmance by that court to the Court of Appeals.

*Harold Otis* for appellant. The sale in question was a perfectly regular and legal corporate act, regardless of section 16 of the Stock Corporation Law, and was in fact made and authorized without reference to section 16. Therefore, it did not give rise to the rights created by section 17. (*Raymond v. S. Ins. Co.*, 111 App. Div. 191 ; *Ritchie v. V. M. Co.*, 1 Ont. L. R. 634 ; *Abbott v. A. H. R. Co.*, 33 Barb. 578 ; *People v. Ballard*, 134 N. Y. 269 ; *People ex rel. Barney v. Whalen*, 119 N. Y. 749 ; 189 N. Y. 560.)

*Harold Bunker* for respondent. The sale of the "calendar department" was a sale of a part of the company's property, rights, privileges and franchises or an interest therein within the meaning of the statute. (*People ex rel. W. L. Co. v. Gaus*, 199 N. Y. 147 ; *Abbott v. A. H. R. Co.*, 33 Barb. 593 ; *C. C., etc., Co. v. T. C. Co.*, 106 Tenn. 651 ; *Marvin v. Anderson*, 111 Wis. 387.)

Vann, J. This appeal involves the construction of sections sixteen and seventeen of the Stock Corporation Law. Section sixteen, which is entitled "Voluntary sale of franchise

and property," provides that "A stock corporation &ast; &ast; &ast; with the consent of two-thirds of its stock, may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation, engaged in a business of the same general character &ast; &ast; &ast; and such sale and conveyance shall, in case of a sale to a domestic corporation, vest the rights, property and franchises thereby transferred &ast; &ast; &ast; in the corporation to which they are conveyed for the term of its corporate existence. &ast; &ast; &ast; Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting." The provisions authorizing a sale of property only to a foreign corporation are not now material.

Section seventeen, entitled, "Rights of non-consenting stockholders on voluntary sale of franchise and property," provides that "If any stockholder not voting in favor of such proposed sale or conveyance shall at such meeting, or within twenty days thereafter, object to such sale, and demand payment for his stock, he may, within sixty days after such meeting, apply to the Supreme Court &ast; &ast; &ast; for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, and &ast; &ast; &ast; also direct the manner in which payment for such stock shall be made to such stockholder. &ast; &ast; &ast; When the corporation shall have paid the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock and in the corporate property of such corporation and such stock may be held or disposed of by such corporation." (Stock Corporation Law [L. 1909, ch. 61], §§ 16 and 17; Consolidated Laws, ch. 59, §§ 16 and 17.)

The appellant claims that the sale of the calendar department is in the line of its ordinary business; that it is a lawful corporate act regardless of section sixteen and that it did not give to the dissenting stockholder the rights created by section seventeen.

The substance of the sections in question was first enacted

by chapter 638 of the Laws of 1893, probably to meet the situation as it was left by a line of judicial decisions ending in 1892. The valuable opinion of Judge ALLEN in *Abbot v. American Hard Rubber Co.* (33 Barb. 578), after standing the test of time and criticism for thirty years, was followed by *People* v. *Ballard* (134 N. Y. 269). These cases and those which intervened established the law that a corporation cannot sell all its property, or even a part thereof so integral as to be essential for the transaction of its ordinary business, because such a sale is wholly or partly an act of self-destruction and a practical dissolution without compliance with law.

The discussion of the subject in the various opinions suggested two evils: (1) The injustice to the bulk of the stockholders from want of power in a corporation to sell its business or an essential part thereof to another corporation organized for the purpose, frequently from its own membership, on terms deemed advantageous by the holders of a large majority of the stock. (2) The injustice to minority stockholders of requiring them to abandon, change or limit their business if the majority should have the power to direct such a sale. An incidental evil was the power of a dissenting stockholder to compel the majority to buy him out on his own terms in order to secure unanimous consent with no one left to question the transaction.

These evils could be remedied only by legislation, for the courts cannot provide against inherent defects in the creation of corporations. The act of 1893 is reproduced and amplified by sections sixteen and seventeen of the statute now in force. This legislation was designed to meet the evils pointed out by the courts by enabling a majority of two-thirds to sell if they deemed it was the best policy, and at the same time to protect the minority, if they regarded the sale as opposed to their interests. The situation when the original act was passed points to the purpose of the legislature and throws light on the meaning of the words used to express its intention. Notwithstanding the broad language of section sixteen, it is obvious that it was not addressed to ordinary sales by a corporation,

nor even to those extraordinary in size but still in the regular line of its business, for such sales would have been valid without amending the Stock Corporation Law. We are not now called upon to lay down a rule embracing all the cases covered by the statute, but simply to decide whether the facts of this case bring it within the sections under consideration.

The sale before us was not made in the ordinary course of the business of the corporation, for it was not organized to sell calendar departments, or any department that would involve going out of business *pro tanto*. It was not a sale of calendars over the counter or on the road, but of the "business assets and property," including the good will, of an independent and important branch of its business, and the large price agreed upon indicates the actual value of what was sold. The parent company lacked capital to carry on the department, and, as the learned counsel for the appellant states, "the sale was a business necessity," which implies that it was not in the ordinary course. By the sale of the good will the corporation would be prevented from ever engaging in that kind of business again, and while not in form a sale of its franchise to that extent, it would be in effect, because it could no longer exercise its franchise to make and sell calendars. One of the powers conferred by the charter would thus be parted with, and the right to carry on a line of business authorized by the law of its being would be permanently gone. It could not do a kind of business duly authorized by its charter as it had before. As an arm of a living man may become paralyzed and useless, so an arm of the appellant would become paralyzed and useless by a sale such as the one described. As the living arm could no longer lift, or touch, or exercise its cunning, so the arm of the artificial being could no longer make calendars, or sell them, or enter into contracts relating thereto. Its own action would result in complete paralysis of every power required to conduct a calendar department and to this extent it would go out of business. Such a sale would, therefore, be corporate suicide to a certain extent, and to that extent a sale or abandonment of the charter. While a natural person

may do anything within the limits of his physical and mental capacity not forbidden by law, an artificial person can do nothing except as authorized by law.   The sale in question would not be valid without resorting to section sixteen, and by resorting to that section the appellant opened the door for the respondent to enter and demand his rights under section seventeen.   The claim that the earlier section was not invoked by specific mention in the notice calling a meeting of stockholders to authorize the sale, is met by the statement therein that ✓ "under the charter of the córporation the calendar department cannot be transferred to a separate corporation without the authorization of the holders of two-thirds of the capital stock."   While this did not refer directly to the Stock Corporation Law it did indirectly, for every statute which adds to or takes from the power of a corporation is a part of its charter.

As the appellant availed itself of the privilege conferred by the statute, it must comply with the condition prescribed for the exercise thereof.

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order affirmed.