In the Matter of HARRY KUNIN et al., as Stockholders of Title Guarantee and Trust Company, Appellants. TITLE GUARANTEE AND TRUST COMPANY, Respondent.

First Department, May 12, 1953.

*Joseph K. Reichbart* of counsel (*Lester Gutterman* with him on the brief; *Gutterman, Newman & Reichbart,* attorneys), for appellants.

*Joseph V. McKee* of counsel (*John J. Boyle* with him on the brief; *Joseph V. McKee,* attorney), for respondent.

*Per Curiam.* On this record we believe that respondent, Title Guarantee and Trust Company, made the transfers here in question in good faith and for a purpose that the directors and officers considered was for the best interests of the corporation and the stockholders. Petitioners appellants, however, owning a total of 5,800 shares of respondent's stock and owners of many shares for years, objected and disapproved the transfers and demanded an appraisal of their stock and payment to them of the determined value thereof.

The transfer was made on the approval of over two thirds of the stockholders of the company. But respondent contends that the assets transferred were not needed for the company's proper and successful operation; that the consent of stockholders under section 20 of the Stock Corporation Law was not needed; and that it was an authorized transfer in the regular course of business in line with the company's activities and subject to the exercise only of the honest judgment of its trustees.

The sole question before us is whether the transfer of $2,125,000 of the respondent's assets to North River Securities Company in exchange for the capital shares of that company to be distributed share for share to respondent's stockholders entitles appellants, dissenting stockholders, to an appraisal under section 20 of the Stock Corporation Law.

The test is whether the sale was a sale in the ordinary course of business. The sale in question involved about one third of the respondent's assets. It resulted in an investment by the Title Guarantee and Trust Company stockholders in the North River stock, a substantially different business, and one in which Title Guarantee and Trust Company was not authorized to engage; and a divorcement of the assets from the business and distribution to stockholders, compelling them to make an investment in an altogether different business from the one in which they invested when they bought respondent's stock. This can hardly be termed a sale in the ordinary course of business. Each case must be considered on its own facts and circumstances. In spite of respondent's good faith and its intention to aid its stockholders to avoid prohibitively high taxes, we think, in the light of all the facts and circumstances disclosed, that the learned court erred in denying *in toto* petitioners' application and that the sale may not properly be held to be a sale in the ordinary course of respondent's business.

Respondent admits that the transfer involved in its disposal of its banking and fiduciary business would give rise to the right under section 20 of an appraisal to dissenting stockholders. As a result of that prior transaction, however, respondent now contends that the assets here disposed of are no longer needed as working capital and that the sale here in question was a subsequent and separate transaction. However, it is significant that respondent, before consummation of this sale, sought and procured approval of the Superintendent of Banks and the Banking Board.

The sale and exchange of stock was not something in furtherance of the purpose for which the corporation existed as in *Matter of Miglietta (2660 Broadway Corp.)* (287 N. Y. 246). On the contrary, it was *pro tanto* going out of the only business in which, after disposal of its banking and fiduciary business, respondent was authorized to engage, viz., the business of title insurance; and the exchange of stock puts the stockholders into an entirely different corporation in an entirely different business which respondent as such would have no right to carry on. It is most important that stock instead of cash was received in

exchange. Even though the stock was not retained by respondent itself but delivered to the shareholders share-for-share, it was not a sale in the ordinary course of business because it put the stockholders into an entirely different business and a dissenting stockholder has the right to say: *non hæc in fœdera veni,* and to insist on an appraisal of his stock under section 20.

Petitioners opposed this transfer from the start; they gave respondent formal and timely notice of their opposition; and appeared by counsel in opposition at the stockholders' meeting. Accordingly, in view of all the facts disclosed including the illness of petitioner Maxwell Kunin and his inability to have access to the vault in Chicago where petitioners' shares were deposited, petitioners should be relieved of their default in presenting their stock for notation.

The motion is for the appointment of an appraiser. Because it believed that the stockholders' consent was not necessary, respondent made no offer for the stock and did not furnish the financial statements required by section 21 of the Stock Corporation Law. It may be that the great expense of appraisal proceedings can in any event be avoided after petitioners' certificates have been presented for notation and the relevant provisions of section 21 are complied with.

Accordingly, the order appealed from should be modified, without costs, to the extent of granting the motion so as to relieve petitioners from their default in presenting their certificates for notation and to direct the parties to comply with the procedure prescribed by section 21 of the Stock Corporation Law and, as so modified, the order is affirmed.

VAN VOORHIS, J. (dissenting). The question at issue is whether dissenting stockholders are entitled to have their shares appraised and purchased under section 21 of the Stock Corporation Law, upon the ground that the corporation has conveyed " its property, rights, privileges and franchises, or any interest therein or part thereof " pursuant to section 20 of the same act. It was said in *Matter of Timmis* (200 N. Y. 177, 180–181) per VANN, J.: " The substance of the sections in question was first enacted by chapter 638 of the Laws of 1893, probably to meet the situation as it was left by a line of judicial decisions ending in 1892. The valuable opinion of Judge ALLEN in *Abbot* v. *American Hard Rubber Co.* (33 Barb. 578), after standing the test of time and criticism for thirty years, was followed by *People* v. *Ballard* (134 N. Y. 269). These cases and those which intervened established the law that a corporation cannot sell all its

property, or even a part thereof so integral as to be essential for the transaction of its ordinary business, because such a sale is wholly or partly an act of self-destruction and a practical dissolution without compliance with law ''.

It was admitted by appellants' counsel upon the argument that if the property transferred by this corporation had been sold for cash, instead of for stock in the purchasing corporation, the sale would not have been such as is described in section 20, and appellants would not have been entitled to have their stock appraised under section 21. The decisive circumstance is, therefor, that the property is being sold for stock instead of for cash. To hold that this gives rise to a right of appraisal would involve a misconstruction of the statute, which does not accord to objecting minority stockholders the right to have their shares appraised in all cases of sales of corporate assets out of the usual course of business, but only in event of a sale of a part of the corporate assets '' so integral as to be essential for the transaction of its ordinary business '' (*Matter of Timmis, supra,* p. 181). It has, of course, been said truthfully that such a sale is not in the usual course of business, but the test is whether the property sold is essential to the transaction of the ordinary business of the corporation. The property transferred by this corporation, claimed to create a right to an appraisal in appellants, is or is not essential to the transaction of its ordinary business, without regard to whether it is sold for cash or some other consideration.

If the shares of stock taken by respondent in the purchasing corporation are worth substantially less than the value of the property transferred, or if the vendor corporation is forbidden by the Banking Law to retain such stock, that would at most have furnished a ground for restraining the sale altogether as illegal or as a waste of corporate assets. In that event, no valid sale could be made pursuant to section 20 of the Stock Corporation Law, even if two thirds of the outstanding voting shares approved; the remedy of the minority would be to enjoin the sale, rather than to have their shares appraised and bought out, which can only be done in event of a valid sale.

It may well be that the assets thus disposed of were rendered unnecessary to the further conduct of the business of respondent corporation, in consequence of its having earlier disposed of its banking and fiduciary business to Bankers Trust Company. That was a transfer of an integral part of the business of the corporation, and would have given rise to a right of appraisal, except that in August, 1950, it was approved by respondent's

stockholders, including appellants. The disposal of the assets presently involved is merely an aftermath of that prior transaction. Having narrowed the scope of its business by the earlier sale to Bankers Trust Company, the assets involved in this proceeding were no longer needed as working capital, and the object of selling them for stock in the purchasing corporation was immediately to distribute the shares of stock so acquired among its stockholders. The same thing could have been done, though subject to greater tax liability, if these assets had been sold for cash. This program was approved by the Superintendent of Banks and by the Banking Board, and the Commissioner of Internal Revenue has ruled it to be a tax-free transfer. The assets described in the plan have been transferred to the new corporation in exchange for its capital stock, which has been distributed. Appellants are no more entitled to have their stock appraised and purchased by the corporation than would have been the case if the sale of these assets had been for cash, followed by its distribution to the stockholders as a dividend.

The opinion in *Matter of United Gas Corp.* (58 F. Supp. 501, affd. 162 F. 2d 409) explains and cites with approval *Matter of Timmis (supra)*. *Matter of Fulton* (257 N. Y. 487, 492) construes *Matter of Timmis* in the same manner, and indicates that the language of the opinion in the later case of *Matter of Miglietta (2660 Broadway Corp.)* (287 N. Y. 246, 254) was not intended to be any broader. In the *Miglietta* case, the right of appraisal was denied in the case of a salvage corporation, which had been formed for the purpose of liquidating properties which it acquired. Such transactions were " in the regular course of the business of the corporation and in furtherance of the express objects of its existence " (*Matter of Miglietta [2660 Broadway Corp.], supra,* p. 254, citing *Matter of Timmis*). Clearly, it was not intended to change the more precise statement of the rule in *Matter of Timmis,* by extending the right of appraisal to any sale outside of the regular course of business, such as might be covered by the Bulk Sales Act (Personal Property Law, § 44). The transfer must still have been an act of at least partial self-destruction of the corporation by disposing of an integral part of its business. The point in the *Miglietta* case was simply that a transaction could not fall into that category if it was merely being conducted in furtherance of the business of the corporation. The decision in the *Miglietta* case contains no indication that it was intended to depart from the statutory test, which has been made to depend upon whether the corporation conveys " its property, rights, privileges and franchises, or any interest

therein or any part thereof ". This language refers exclusively to the nature of the property transferred, and not to the character of the consideration which is received in exchange.

The precise language from *Matter of Timmis* that is quoted above, and which, together with the language of the statute, forms the basis of this dissent, was quoted with approval in *Matter of Bacon (Susquehanna Silk Mills)* (287 N. Y. 1, 4–5) in an opinion per LEHMAN, Ch. J. Likewise, the annotation upon this point (9 A. L. R. 2d 1306) indicates that although the right to an appraisal is denied in the case of a sale made in the regular course of business, the converse is not true unless the sale be such as to prevent the corporation from accomplishing purposes or objects for which it was incorporated, due to the alienation of an integral part of the business. To the same effect is the " Commentary " on the history and purpose of the statute appended to section 20 of the Stock Corporation Law in White on Corporations (Vol. 3 [12th ed.], pp. 606 *et seq.*).

The order appealed from should be affirmed, with costs.

PECK, P. J., GLENNON, DORE and BERGAN, JJ., concur in *Per Curiam* opinion; VAN VOORHIS, J., dissents and votes to affirm, with costs, in opinion.

Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs. Settle order on notice. [See 282 App. Div. 668.]