PEOPLE ex rel. PENNSYLVANIA, N. Y. & L. I. R. CO. v. O'DONNEL et al.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. TAXATION (§ 391*)—ASSESSMENT.
  Where, prior to the day for taking valuations for purposes of taxation, a street was vacated, and the title to the bed thereof was transferred by the city to a railroad company which had acquired the title to lots abutting on both sides of the street for the purpose of constructing a terminal station, which would render the further use of the street as such impossible, the lots should have been valued and assessed as inside lots, and not as lots having a street frontage.

  [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 391.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TAXATION (§ 348*)—"PLOTTAGE."

    "Plottage" is a percentage added to the aggregate value of two or more contiguous lots when held in one ownership as representing an increased value pertaining to a group of lots by reason of the fact that they admit of more advantageous disposition and improvement than a single lot.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 585; Dec. Dig. § 348.*

    For other definitions, see Words and Phrases, vol. 6, p. 5417.]

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of the Pennsylvania, New York & Long Island Railroad Company, against Frank A. O'Donnel and others, as commissioners, etc., to review assessments for taxation of real estate. From parts of a final order confirming the report of a referee in the proceedings, relator appeals. Order modified.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Albert B. Boardman, for appellant.

David Rumsey, for respondents.

SCOTT, J. In this proceeding the relator seeks to review the assessment of its real estate for the purpose of taxation for the year 1904. The premises affected comprise practically all four city blocks, bounded by Seventh and Ninth avenues and Thirty-First and Thirty-Third streets. The property had been acquired for the purpose of constructing the large terminal station of the Pennsylvania Railroad Company, and on the second Monday of January, 1904, the day fixed by law as that upon which valuations were to be taken, the relator had torn down all the buildings on the land in question, and had commenced to excavate the ground. The plans of the relator for the proposed station required the use and occupation by it of the portion of Thirty-Second street lying between Seventh and Eighth avenues. These plans were approved by the board of rapid transit railroad commissioners, and the relator acquired all the land abutting on Thirty-Second street between the avenues mentioned. Thereupon, by resolution of the board of estimate and apportionment, approved by the mayor, on December 2, 1903, the map of the city was changed and Thirty-Second street, between said avenues, was closed and discontinued as a public street. Subsequently, and on December 31, 1903, the relator acquired by purchase from the city of New York the absolute title to the land constituting the bed of what had been Thirty-Second street between said avenues. But two questions are presented on this appeal: First. Should the lots between the avenues mentioned above be assessed and valued for the purposes of taxation as lots having on the second Monday of January, 1904, a street frontage on Thirty-Second street, or should they be assessed and valued as interior lots? Second. Should the valuation of the lots upon the four blocks owned by relator be increased by a "plottage" allowance?

As to the first question, we think that the lots formerly fronting on Thirty-Second street should have been assessed as interior lots, because that in point of fact is what they became as soon as the street was discontinued and closed. The argument opposed to this view is that, because it lay within the power of the relator as owner of the street to establish it as a private way or rededicate it to public use as a street, the lots should be valued as if that had been done. This view is untenable when there is taken into account the fact that the very purpose of the relator in purchasing the street after it had been legally closed was to devote it to a use which would render its further use as a street impossible. If that purpose should be abandoned and the street reopened or rededicated, a different condition of affairs would be created, to which a different rule of valuation would apply. The question is not now, however, what might be done with the property, but what had in fact been done on the date in 1904 with reference to which the valuation was made. We are, therefore, of the opinion that the lots in question should have been valued and assessed as inside lots.

"Plottage" is correctly defined by the referee as "a percentage added to the aggregate value of two or more contiguous lots when held in one ownership, as representing an increased value pertaining to a group of lots by reason of the fact that they admit of more advantageous disposition and improvement than a single lot." The referee has properly added to the value found by him a "plottage" allowance of 10 per cent. In this he is sustained by the opinion of most of the expert witnesses. It may be that a whole city block is too large to be conveniently sold in bulk, or improved by the erection of a single building, if not used as relator proposes to use these blocks. But the blocks could be easily cut up into parcels of convenient size, and thus sold with plottage advantages.

The order appealed from will therefore be modified as indicated herein, without costs to either party in this court. The referee has so drawn his report that the necessary facts to enable a modification to be made are all found, so that it will not be necessary to send the matter back for a further hearing. All concur.