In the Matter of the Application of JOSEPH P. BICKERTON, JR., and WILLIAM HARRIS, JR., as Executors, etc., of WILLIAM HARRIS, Deceased, Respondents, Stockholders of the NEW YORK THEATRE COMPANY, for the Appointment of Appraisers to Appraise the Value of Their Stock.

NEW YORK THEATRE COMPANY, Appellant.

In the Matter of the Application of ARTHUR S. ARNOLD and Others, as Executors and Trustees under the Last Will and Testament of SAMUEL F. NIRDLINGER, Deceased, Respondents, Stockholders of the NEW YORK THEATRE COMPANY, for the Appointment of Appraisers to Appraise the Value of Their Stock.

NEW YORK THEATRE COMPANY, Appellant.

In the Matter of the Application of ABRAHAM L. ERLANGER, Respondent, a Stockholder of the NEW YORK THEATRE COMPANY, for the Appointment of Appraisers to Appraise the Value of His Stock.

NEW YORK THEATRE COMPANY, Appellant.

First Department, March 4, 1921.

Corporations — voluntary sale of property of domestic stock corporation — report of appraisers as to value of stock and assets of dissenting stockholders is conclusive — power of court to confirm — Stock Corporation Law, sections 16 and 17, construed and applied — proceedings under Stock Corporation Law, section 17, and Business Corporations Law, section 8, distinguished.

The report of the appraisers in proceedings by the minority stockholders of a domestic stock corporation protesting against a proposed sale of property of the corporation, brought under section 17 of the Stock Corporation Law, after a two-thirds vote of the corporate stockholders as required by section 16 of said law has authorized a sale, is final and conclusive, and the court is without power to pass upon any exceptions filed to such report.

*It seems*, that in such case the court could not have properly entered an order confirming the report.

The court is given power only to designate the time and place of the appraisers' proceedings, and after they have made their estimate of value and delivered their certificates in the prescribed manner, the court has no control over the report.

Proceeding for appraisal under section 17 of the Stock Corporation Law, and section 8 of the Business Corporations Law, distinguished.

APPEAL by the New York Theatre Company from orders of the Supreme Court, made at the New York Special Term in each of the above-entitled proceedings and entered in the office of the clerk of the county of New York on the 12th day of August, 1920, denying the motion of the said New York Theatre Company in each proceeding, to modify or set aside the majority report and appraisement of the appraisers, filed on the 15th day of July, 1920.

*Shearn & Hare* [*Clarence J. Shearn* of counsel], for the appellant.

*Joseph P. Bickerton, Jr.*, attorney [*Joseph P. Bickerton, Jr.*, of counsel; *Philip Wittenberg* and *Sidney R. Fleisher*, with him on the brief], for the respondents.

DOWLING, J.:

The New York Theatre Company, a domestic stock corporation, was organized March 20, 1903, to purchase and own the building situated on Broadway, from Forty-fourth to Forty-fifth streets, in the borough of Manhattan, New York city, together with the land on which it was erected, and to conduct in said premises a general amusement business, and to do and perform all things in any wise relating to said business. On October 24, 1919, the corporation, at a stockholders' meeting, by a vote of more than two-thirds of the stock in favor thereof, voted to convey the said land and building to the Seneca Holding Corporation, a domestic corporation, for the sum of $3,200,000. The outstanding stock of the New York Theatre Company amounts to 11,248 shares of the par value of $100 each. The petitioners herein are Joseph P. Bickerton, Jr., and William Harris, Jr., as executors under the last will and testament of William Harris, deceased, as owners of 700 shares of said stock; Arthur S. Arnold, Abraham L. Erlanger and Real Estate Title and Trust Company of Philadelphia, as executors and trustees under the last will of Samuel F. Nirdlinger, deceased, as owners of 839 shares thereof; and Abraham L. Erlanger as owner of 1,659 shares thereof. These 3,198 shares of stock at the stockholders' meeting were voted against the proposed sale. But the requisite two-thirds vote was given in favor of the sale

pursuant to the requirements of section 16 of the Stock Corporation Law. The petitioners duly protested against the proposed sale and filed a written protest and commenced these three proceedings (now consolidated into one) pursuant to the provisions of section 17 of the Stock Corporation Law. On appropriate petition the Supreme Court at Special Term, Part I, made an order pursuant to the statute appointing three appraisers to appraise the value of the stock of said petitioners. Said order designated January 26, 1920, " at 2:30 o'clock of that day and such other times as the majority of the said appraisers shall fix " as the time of their proceedings, and also designated a specific office as the place of their proceedings; it provided that any vacancy in the board of appraisers should be filled by the court upon five days' notice, and further proceeded as follows:

" Ordered, that the said appraisers or any two of them, shall estimate and certify to this court in writing over their signatures, the value of the petitioners' stock, as of the 24th day of October, 1919, the time of the petitioners' dissent; and it is further

" Ordered, that the manner in which payment of the said stock shall be made by the said New York Theatre Company to the said petitioners is hereby directed to be in cash within fifteen (15) days after the certification by the said appraisers of the value of the petitioners' stock; and it is further

. " Ordered, that the board of appraisers shall deliver one (1) copy of their report, estimate and certificate to the New York Theatre Company, and another to the petitioners; and it is further

" Ordered, that the charges and expenses of the said board of appraisers shall be taxed under the direction of this court, and shall be paid by the New York Theatre Company; and it is further

" Ordered, that when the said New York Theatre Company shall have paid the amount of such appraisal, together with the costs, charges herein provided, the petitioners shall cease to have any interest in the stock described in the said petition, and in the corporate property of the said New York Theatre Company, and that the said stock may be held and disposed of by the said New York Theatre Company; and it is further

" Ordered, that the petitioners and the board of appraisers and the respondent New York Theatre Company may apply at the foot of this order for any other relief as may be just and proper."

The appraisers appointed by the court entered upon the discharge of their duties and took a large amount of testimony offered by both the petitioners and the respondent therein, and finally made a report in which a majority of the appraisers joined, which was delivered to the respective parties, and this report was subsequently returned to the appraisers at their request to correct an error therein due to their failure to make allowance for a mortgage upon the property in the sum of $1,100,000. Thereafter a report was made in triplicate original and signed by the majority of the appraisers. One of said originals and an original of a minority report signed by the third appraiser were delivered to the respective parties and the third original majority report, with the accompanying testimony, was filed with the county clerk of New York county on July fifteenth, and the third original minority report was filed on July sixteenth. Thereafter and on July 21, 1920, the New York Theatre Company served upon the petitioners' attorney and filed with the clerk of the county of New York exceptions to the said report and appraisement of the majority of the appraisers, as excessive, as contrary to the law and the evidence and as against the weight of evidence, and as based upon wrong principles of basic importance; specifications being given of the respects in which it was claimed the majority report was incorrect. By said report the value of the real estate in question, as enhanced by the building thereon and its contents, was fixed at $3,426,250, and the value of each share of capital stock of the New York Theatre Company, representing its proportionate share of the total assets of the said company, was fixed by said report at $220.01. Besides the real estate in question the company had on hand in cash the sum of $170,957.54. On July 26, 1920, the New York Theatre Company obtained an order to show cause why an order should not be made and entered consolidating the three proceedings brought by petitioners into one, and setting aside the report and appraisement of the majority appraisers as excessive, as contrary to the law and evidence and as against

the weight of evidence, and as based upon wrong principles of basic importance; or, in the alternative, why said report and appraisement should not be modified, and why the company should not have such other and further relief as might be just and proper in the premises. Thereafter on August 12, 1920, an order was made at Special Term, Part I, of the Supreme Court, whereby the motion of the New York Theatre Company was granted in so far as it asked that the three separate proceedings herein be consolidated. The court proceeded to say in the opinion which formed a part of the short form order which is the order appealed from herein: " * * * The motion to modify or set aside the majority report must be denied. A careful examination of the record does not disclose any substantial error. The appraisers have passed on the question of value as one of fact. Considerable testimony was taken and a thorough inspection of the premises was made. Under the circumstances, I do not believe that the court would be justified in substituting its judgment for that of the appraisers who were duly designated to hear and determine the facts." It will be seen that this order does not undertake to confirm the majority report of the appraisers; it simply refuses to sustain the exceptions filed thereto by the New York Theatre Company.

Upon this appeal the respondents contend that the Special Term was without power to take any action, either to confirm, modify or reject the report of the appraisers, and that the rights of the parties were finally and conclusively settled by the original order made at Special Term appointing the appraisers; they further contend that an appeal does not lie to this court from the order of Special Term, and that this appeal must be dismissed.

The question before us involves the effect to be given to section 17 of the Stock Corporation Law. Section 17 must be read in connection with section 16 of the same law.* The two sections are as follows:

" § 16. Voluntary sale of franchise and property. A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of two-thirds

---

* See, also, Laws of 1920, chap. 396, since amdg. said § 16.— [REP.

of its stock, may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation, engaged in a business of the same general character, or which might be included in the certificate of incorporation of a corporation organizing under any general law of this State for a business of the same general character, and a domestic corporation the principal business of which is carried on in, and the principal tangible property of which is located within a State adjoining the State of New York, may with the consent of the holders of ninety-five per centum of its capital stock, sell and convey its property situate without the State of New York, not including its franchises, to a corporation organized under the laws of such adjoining State, and such sale and conveyance shall, in case of a sale to a domestic corporation, vest the rights, property and franchises thereby transferred, and in case of a sale to a foreign corporation the property sold, in the corporation to which they are conveyed for the term of its corporate existence, subject to the provisions and restrictions applicable to the corporation conveying them.  Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting.

" § 17. Rights of non-consenting stockholders on voluntary sale of franchise and property.  If any stockholder not voting in favor of such proposed sale or conveyance shall at such meeting, or within twenty days thereafter, object to such sale, and demand payment for his stock, he may, within sixty days after such meeting, apply to the Supreme Court at any Special Term thereof held in the district in which the principal place of business of such corporation is situated, upon eight days' notice to the corporation, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, and designate the time and place of their proceedings as shall be deemed proper, and also direct the manner in which payment for such stock shall be made to such stockholders.  The court may fill any vacancy in the board of appraisers occurring by refusal or neglect to serve or otherwise.  The appraisers shall meet at the time and place designated, and they or any two of them,

after being duly sworn honestly and faithfully to discharge
their duties, shall estimate and certify the value of such
stock at the time of such dissent, and deliver one copy to
such corporation, and another to such stockholder, if demanded;
the charges and expenses of the appraisers shall be paid by
the corporation.   When the corporation shall have paid the
amount of such appraisal, as directed by the court, such stock-
holders shall cease to have any interest in such stock and in
the corporate property of such corporation and such stock
may be held or disposed of by such corporation."

These provisions form no part of the original Stock Corpora-
tion Law (Gen. Laws, chap. 36; Laws of 1890, chap. 564; Laws
of 1892, chap. 688).   Largely in their present form, they were
added as a new section (33) to the Stock Corporation Law
of 1892 by chapter 638 of the Laws of 1893, when the subject-
matter of both the present sections 16 and 17 was embraced
in said section 33.   By chapter 130 of the Laws of 1901
section 33 was amended by adding the provision now in
section 16 that " a domestic corporation the principal business
of which is carried on in, and the principal tangible property
of which is located within a State adjoining the State of New
York, may with the consent of the holders of ninety-five per
centum of its capital stock, sell and convey its property
situate without the State of New York, not including its
franchises to a corporation  organized under the laws of such
adjoining State, and such sale and conveyance shall, in case
of a sale to a domestic corporation, vest the rights, property
and franchises thereby transferred, and in case of a sale to
a foreign corporation the property sold in the corporation
to which they are conveyed for the term of its corporate
existence, subject to the provisions and restrictions applicable
to the corporation conveying them."   In *Matter of Timmis*
(200 N. Y. 177) Judge VANN said that the amendment made by
chapter 638 of the Laws of 1893 was meant to meet a line of
judicial decisions  ending in 1892, when the opinion of Mr.
Justice ALLEN, in *Abbot* v. *American Hard Rubber Co.* (33 Barb.
578) was followed (after standing the test of thirty years), in
*People* v. *Ballard* (134 N. Y. 269).   Those cases had held
that a corporation could not sell all its property, or even a
part so integral as to be essential for the transaction of its

First Department, March, 1921.          [Vol. 196

ordinary business, because such a sale was wholly or partly an act of self-destruction and a practical dissolution, without compliance with law.  The opinion stated that certain evils had suggested themselves as worthy of remedy by the Legislature, which were, *first,* injustice to the bulk of the stockholders arising from the want of power in the corporation to sell its business, or an essential part thereof, on terms deemed advantageous by the majority; *second,* the injustice to the minority in requiring them to abandon, change or limit their business if the majority had power to direct a sale; further an incidental evil was the power of the dissenting stockholders to compel the majority to buy them out on their own terms in order to secure unanimous consent, with no one left to question the transaction.  Hence, the court said, this legislation was passed to enable a majority of two-thirds to sell if it was deemed the best policy and at the same time to protect the minority if they regarded the sale as opposed to their interest.  This being the purpose of the law as judicially interpreted, a reference to the terms of the statute in my opinion shows it was intended to be a direct and summary way of ascertaining the value of the stock of the dissenting shareholders.  While the right to sell is conferred upon a corporation by a vote of two-thirds of its stockholders, that right if exercised is with full knowledge of the responsibility attaching to such action in the liability of responding to the claim of the dissenting stockholders that the consideration for the transfer is inadequate.  If the majority choose to sell in the face of such a protest, it is with the knowledge that their action subjects them to the risk that, if the minority exercise their right under the statute, the corporation may be called upon to pay a larger sum to the minority stockholders as the value of their interest than their proportionate share of the amount realized on the sale.  The statute has conferred a privilege upon the majority, but with the duty of properly guarding the interest of any dissenting stockholder and with the liability of responding to him in a larger amount than his share in the amount realized if he can prove that the price of the sale was inadequate.  The Legislature has not undertaken to arbitrarily impose any obligation upon the majority stockholders, but as the price of giving them a privilege which

they did not enjoy at common law, it has required them to observe good faith to secure an adequate consideration for any sale they make and to be prepared to respond to the claim of the minority stockholder that the consideration was inadequate and to his demand for his full share of a fair consideration. This being a purely statutory proceeding, I cannot find in the statute any power conferred upon the court of supervision, revision, control or appeal over the action of the appraisers. In fact, there is in the statute no requirement that the appraisers shall take testimony. It seems to me that it would be competent for them under its provisions to determine the value of the stock of a dissenting minority stockholder upon their own inspection, judgment and view, without the aid of experts. I do not believe that the statute requires either a judicial or a quasi-judicial proceeding upon the part of the appraisers. If they choose to accept testimony which is offered for their consideration by either party I assume they have the right so to do, but I do not think that changes the nature of their function. The statute gives the court appointing the appraisers power only to designate the time and place of their proceedings and the manner in which payment for the stock shall be made. When the appraisers have made their estimate of value and delivered the certificate thereof, one copy to the corporation and another to the stockholder, if demanded, their function ends and the only thing remaining to be done is that the corporation shall pay the amount of the appraisal in the manner directed by the court in the order appointing the appraisers. I am of the opinion that the court has no control whatever over the report of the appraisers, which is not even required by statute to be filed with the court. The industry of the learned counsel for the appellant has been unable to find a single case in which the right of the court to pass upon the report of the appraisers, under section 17 of the Stock Corporation Law, has been upheld. *Matter of Timmis (supra)* was an affirmance of an order appointing appraisers, where the question involved was whether the sale of a particular department of a corporation's business came within the purview of sections 16 and 17. *Matter of Drosnes* (187 App. Div. 425) involved the question whether a particular sale which had been authorized came

within the provisions of the two sections in question so as
to authorize the appointment of appraisers and this court,
by a majority vote, held that it did.    *Matter of Rowe* (107
Misc. Rep. 549) upheld the right of a stockholder to the appoint-
ment of appraisers under section 17 where he was the owner
in fact of stock which had not been registered in his name.
In none of these was the question of procedure upon the
coming in of the appraisal discussed.    In *Matter of Ennis &
Rendich* v. *Federal Brewing Co.* (N. Y. L. J., May 2, 1914)
Mr. Justice BLACKMAR, at Special Term, Second District,
where this precise question was involved decided as follows:
" I find no authority in the statute for action by the court
on the report of the appraisers.    The statute was a part of
the charter of the company and the stockholders held their
stock subject to these provisions.    The dissenting stockholders
had their election either to submit to the action of the directors
and stockholders under section 16 of the Stock Corporation
Law or demand an appraisal under section 17.    They chose
the latter course, and it seems to me that this was equivalent
to a submission of their rights to an award of arbitrators
chosen by the court.    I know of no inherent power of the
court over such an award.    I therefore deny the motion for
want of power to act in the premises."

In *Matter of Paulding,* Special Term, Part I, First District,
reported in New York Law Journal, August 31, 1915, upon
the coming in of the report of the appraisers appointed pursuant
to section 17 of the Stock Corporation Law, which had been
filed, the petitioner moved the Supreme Court for an order
confirming the report and for judgment thereon; on the
hearing on the motion the question was raised whether under
the existing statute the court had power to make the desired
order; thereupon, to avoid delay and expense, the parties
joined in a request to the court that it pass on the matter
of difference between them as arbitrator, and thereafter,
with the approval of the court, they entered into formal
stipulation appointing the court as arbitrator to consider,
adjudge and determine the stipulated matters of difference
between them and providing that his award should be a binding,
conclusive and final adjudication.    Mr. Justice GREENBAUM
thereupon proceeded to determine the matter, but as arbi-

trator under this stipulation and not under any power conferred by statute.

The learned counsel for the appellant contends that the proceeding in Special Term was properly taken and that an appeal lies, and for this contention he relies upon the authority of *Matter of Seaich* (170 App. Div. 686; affd., without opinion, 219 N. Y. 634). It is quite true that in that case the corporation in question followed out the precise procedure attempted by the corporation herein and that this court assumed jurisdiction and modified the appraisal by reducing the assets of the corporation as determined in the amount of $234,403.32. In its opinion this court discussed the facts and passed upon the force and sufficiency of the testimony given before the appraisers. In that case a motion was made to dismiss the appeal taken to the Court of Appeals, upon the grounds that the decision of the Appellate Division was unanimous, that the exceptions were frivolous and that the appeal was taken for the purpose of delay. That motion was denied. (218 N. Y. 692.) But *Matter of Seaich* was a proceeding taken pursuant to the provisions of section 8 of the Business Corporations Law and there is a provision in that law which differentiates it in my opinion clearly from the provisions of the Stock Corporation Law under consideration. Section 8 of the Business Corporations Law has reference to the consolidation of two or more corporations organized under the laws of this State as provided in section 7 thereof. Section 8 requires the agreement of consolidation to be submitted to the stockholders of each of the corporations sought to be consolidated and for a vote thereon at a stockholders' meeting to be held as prescribed by the section. Section 8 then proceeds as follows:

" * * * If any stockholder, not voting in favor of such agreement to consolidate, shall at such meeting, or within twenty days thereafter, object to such consolidation and demand payment for his stock, such stockholder or such new corporation, if the consolidation takes effect at any time thereafter, may at any time within sixty days after such meeting apply to the Supreme Court at any Special Term thereof held in the district in which any county is situated in which such new corporation may have its place of business, upon

First Department, March, 1921.        [Vol. 196

at least eight days' notice to the new corporation, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers and designate the time and place of their first meeting, with such directions in regard to their proceedings as shall be deemed proper, and also direct the manner in which payment for such stock shall be made to such stockholder. The court may fill any vacancy in the board of appraisers occurring by refusal or neglect to serve or otherwise. The appraisers shall meet at the time and place designated, and they or any two of them, after being duly sworn honestly and faithfully to discharge their duties, shall estimate and certify the value of such stock at the time of such dissent, and deliver one copy to such new corporation, and another to such stockholder if demanded; the charges and expenses of the appraisers shall be paid by the new corporation. When the new corporation shall have paid the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock and in the corporate property of such corporation, and such stock may be held or disposed of by such new corporation. Where any consolidation has been heretofore or shall be hereafter effected pursuant to the laws of this State, and the holders of ninety per centum of the capital stock of each of such corporations have voted in favor of such agreement to consolidate, if any stockholder not voting in favor of such consolidation shall fail to exchange his stock for stock of such new corporation within sixty days after this act shall go into effect, or, in case of a consolidation hereafter effected, within sixty days after he shall have become entitled to make such exchange, such new corporation may, at any time thereafter, upon at least eight days' notice to such stockholder, to be given personally, within the State, if possible, and if not, then in such manner as the court shall direct, apply to the court, as hereinbefore provided, for the appointment of three persons to appraise the value of such stock at the time of the expiration cf such sixty days. Upon the completion of the appraisal in the manner hereinbefore provided for, and the payment by such new corporation of the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock, and in the corporate

property of such corporation, and such stock may be held or disposed of by such new corporation."

It will be seen that pursuant to the provisions of this section the court is given power not only to appoint the appraisers and designate the time and place of their first meeting, but also to give " *such directions in regard to their proceedings as shall be deemed proper.*" In *Matter of Seaich* the provisions of this section were strictly complied with and, as the original record on appeal in this case shows, the order appointing the appraisers gave the most detailed directions as to how they should proceed, which was within the authority conferred by the provisions of section 8 of the Business Corporations Law, by which the court was empowered to " direct their proceedings." Thus the order in that matter, after appointing the appraisers, gave them power to issue subpœnas ad testificandum and duces tecum under the hand of the chairman and to administer an oath to any person who might be produced as a witness by either party. Further, that the questions which might arise on the appraisal should be heard and determined by the appraisers or any two of them who should make a report which would include a transcript of the testimony taken by them; further, that the persons so appointed or any two of them should estimate and certify to the court, in writing over their signatures, the value of petitioner's stock. Further, and most important of all, and perhaps furnishing a sufficient reason why the procedure in the *Seaich* case was never questioned, the order provided: " That the manner in which payment for such stock shall be made by the said Mason-Seaman Transportation Company, the respondent herein, to the said petitioner herein, shall and is hereby directed to be made in cash within ten days after the entry of an order of this Court confirming, approving or modifying the report, estimate and certificate of the said persons, which said order may be enrolled and docketed as a judgment as provided in Rule 27 of the General Rules of Practice and under which order the petitioner may have execution for the enforcement of the payment directed to be made to him thereby; and it is further

" Ordered that said persons so appointed shall deliver one copy of their report, estimate and certificate to the respondent

herein and another to the petitioner herein, whereupon either party may move before this Court upon at least five days' notice to the other for the confirmation, approval, rejection or modification of such report, estimate and certificate."

Thus it will be seen that the order under which the appraisal was made required as a condition for the payment by the corporation the entry of an order confirming, approving or modifying the report. The order in this case contains no such provision, nor do I see how the court could have included such a provision therein under the provisions of section 17 of the Stock Corporation Law unless both parties had consented thereto and voluntarily conferred jurisdiction upon the court outside the statute, as was done in effect in *Matter of Paulding*, hereinbefore referred to. The original order in *Matter of Seaich* not having been appealed from or questioned, it was binding on both parties and amounted to an appraisal by mutual consent, subject to revision by the court.

It seems to me that the differences between the provisions of section 8 of the Business Corporations Law and section 17 of the Stock Corporation Law are significant and they cannot be held to be accidental or purposeless. In any event, for the reason stated the procedure in the *Seaich* case is not controlling in the present case.

My conclusion is that under the provisions of section 17 of the Stock Corporation Law the report of the appraisers in this proceeding was final and conclusive and that the court was without power to pass upon any exceptions filed to such report. Nor could the court have properly entered an order confirming the said report, which, however, it was not asked to do by the petitioners and did not attempt to do.

The appeals should, therefore, be dismissed, with costs.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Appeals dismissed, with costs and disbursements