In the Matter of the Application of ABRAHAM L. ERLANGER and Others, Stockholders of the NEW YORK THEATRE COMPANY, for the Appointment of Appraisers to Appraise the Value of Their Stock, Appellants, Respondents.

NEW YORK THEATRE COMPANY, Respondent, Appellant.

First Department, July 6, 1923.

Corporations — voluntary sale of property — proceedings to appraise stock of non-consenting stockholder — valuation placed on land in city block is supported by evidence — extra percentage allowance for plottage improper where value of buildings was added to value of land — interest should be allowed on award after fifteen days from date of filing report of appraisers under Stock Corporation Law, § 17.

In proceedings to appraise the stock of a stockholder who does not consent to the voluntary sale of property of the corporation, the value placed on the land only of the corporation, which was situated in the city of New York, and consisted of several lots on Broadway on which there were buildings, was supported by the evidence.

The evidence showed that the usual allowance for plottage because of the ownership of several lots contiguous to one another was ten per cent and there was

some evidence that because of the peculiar location and frontage of the plot in question fifteen per cent should be allowed for plottage, but it was shown that the extra allowance for plottage is only permitted in case the property is immediately available for the best possible use. which in this case would be the erection of a tall office building on the front of the lot with two theatres in the rear. It was improper to make the extra allowance for plottage since the appraisers made an allowance for the buildings on the plot and it would be inconsistent to make an allowance also on the basis of a plot without buildings.

The non-consenting stockholder is entitled. pursuant to an order granted under section 17 of the Stock Corporation Law, to interest on the award from fifteen days after the filing of the report of the appraisers even though the proceedings were stayed for nearly three years because of an appeal by the defendant.

MARTIN, J., dissents in part.

APPEAL by the New York Theatre Company from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of February, 1922, confirming the report of appraisers appointed to appraise the value of the petitioners' stock in said company.

Appeal by the petitioners, Abraham L. Erlanger and others, stockholders of the New York Theatre Company, from so much of said order as denies them interest on the value as found by the appraisers from the date of the filing of the report of said appraisers.

*Joseph P. Bickerton, Jr.*, of counsel [*Philip Wittenberg* and *Sidney R. Fleisher* with him on the brief], for the petitioners.

*Shearn & Hare* [*Clarence J. Shearn* of counsel], for the New York Theatre Company.

SMITH, J.:

The petitioners, who are the minority stockholders of the theatre company, appeal from that part of the order of confirmation which denies interest on the awards from the date of the filing of the report of the commissioners to the date of the confirming order. The respondent, the theatre company, appeals from that part of the order which confirms the commissioners' report as to two items, *first*, $40,000 allowed for three feet nine and one-fourth inches of Broadway frontage; and, *second*, the allowance of fifteen per cent for " plottage."

The New York Theatre Company was the owner of a plot of ground on the east side of Broadway, Manhattan, comprising the whole of the block frontage on Broadway between Forty-fourth and Forty-fifth streets with a frontage on Forty-fourth street of 101 feet two and three-fourths inches, and a frontage on Forty-fifth street of 154 feet eight and three-eighths inches. The property fronts on Broadway with a slight slant from a right angle, so that

there is a frontage on Broadway of 203 feet nine and one-fourth inches. On this plot and covering it entirely was a five or six-story building containing two theatres, an extra dance room and a roof garden over the whole of the top of the roof.

The majority stockholders, being in excess of the required two-thirds, desired to sell the property and passed the proper resolutions, and on the 24th of October, 1919, sold the same for $3,200,000. The petitioners, the minority stockholders, being aggrieved at the sale, took proceedings under the Stock Corporation Law to have the value of their stock holdings appraised, and an order of the Supreme Court was entered January 9, 1920, appointing Messrs. Norwood, Ingraham and Kennelly appraisers. In this order was a clause as follows: "Ordered that the manner in which payment of the said stock shall be made by the said New York Theatre Company to the said petitioners is hereby directed to be in cash within fifteen days after the certification by the said appraisers of the value of the petitioners' stock."

Two of the appraisers, Messrs. Norwood and Ingraham, made their report fixing the total value of the property at $3,426,250, and the other appraiser, Mr. Kennelly, filed a report finding the total value of the property at $3,201,442.50. The reports were filed July 15, 1920. All of the parties interested in this proceeding, the witnesses and the appraisers, for the purpose of arriving at the value of the property considered it as having eight lots of the Broadway frontage, some of the witnesses and the minority appraiser taking up the whole of the Broadway frontage with these eight lots. Others of the witnesses and the majority appraisers made the eight lots each of twenty-five feet frontage on Broadway, thereby leaving a small lot three feet nine and one-fourth inches in width front and rear. The petitioners swore four witnesses and the respondent swore four witnesses as to the value of the property. All of the witnesses, except possibly Mr. Bloom, gave a value to a theoretical standard lot twenty-five by one hundred feet of $250,000 in this locality. The witnesses for the petitioners testified that a lot fronting twenty-five feet on Broadway and running back one hundred feet, while containing slightly less than the theoretical rectangular lot twenty-five by one hundred feet, had a value of $250,000 (giving, however, a greater value to a corner lot or a lot next to a corner lot), and that this left the small lot above referred to, to which the majority appraisers gave a value of $40,000. Two of the respondent's witnesses placed their value of the lots as having a frontage on Broadway of twenty-five feet, and each of these witnesses gave a value for the three feet nine and one-fourth inches, one of them adding $37,500 and the other adding $40,000

for that lot. There would, therefore, appear to be ample evidence justifying the majority appraisers in finding the value of the inside lots twenty-five feet frontage on Broadway of $250,000, and that there was an extra lot of three feet nine and one-fourth inches which had a value of $40,000. To this extent the appeal of the defendant should not prevail.

The next point raised by the respondent is as to the allowance by the majority appraisers of " plottage " at fifteen per cent of the total land value found by them. " Plottage " has been defined as " a percentage added to the aggregate value of two or more contiguous lots when held in one ownership as representing an increased value pertaining to a group of lots by reason of the fact that they admit of a larger and more advantageous disposition or improvement than a single lot." (*People ex rel. Pennsylvania, N. Y. & L. I. R. R. Co.* v. *O'Donnel,* 130 App. Div. 734.) It was testified by all of the witnesses that the usual allowance for plottage, because of the ownership of several lots contiguous to one another, was ten per cent. Two of the witnesses for the petitioners have testified that because of the peculiar location and frontage of this plot, fifteen per cent should be allowed for plottage. The other witness for the petitioners, and all of the witnesses for the respondent, testify that ten per cent is all that should be allowed for plottage on this tract, although they all testify that this would be a proper case for an extraordinary allowance for plottage if it were not for the fact that the building on the property has a value which was allowed at from $250,000 to $600,000 by the different witnesses and was fixed by the majority report at $350,000. The witnesses for both parties seem all to agree that " extraordinary plottage can only be allowed beyond the usual ten per cent in case the property is immediately available for the best possible use," and the preponderance of the evidence seems to be that the best possible use of such a property as the one in question would be to erect a tall office building on the front with two theatres in the rear. This " best possible use " could only occur if the present building were torn down, in which case no value should be or could be allowed for the building. The " best possible use " is inconsistent with any substantial allowance for the building. The difference between the ten per cent usual plottage and the fifteen per cent allowed by the majority appraisers amounts to $133,750, and the lowest value given to the building by any of the witnesses was $250,000, the value found by the majority appraisers being $350,000. The testimony of those of the petitioners' witnesses who allow both fifteen per cent for the plottage, and a large sum for the building, shows also that they only considered that property entitled to

extraordinary plottage in case the property is available for the best possible use. The result of this comparison of testimony is that an allowance of $350,000 or any substantial sum for the building is inconsistent with the immediate best use of the land, and consequently inconsistent with an additional plottage allowance. The extra five per cent for plottage should, therefore, be disallowed.

There remains to be considered the question of interest which was disallowed by the order confirming the majority report of the appraisers. The majority report was dated July 9, 1920, and was filed as above stated July 15, 1920. The petitioners did not immediately make a motion to confirm this report, but insisted that they were entitled to be paid without the confirmatory order and " within fifteen days after the certification by the said appraisers of the value of the petitioners' stock," as provided in the order appointing the appraisers. The respondent moved to set aside the report of the appraisers and upon that motion being denied, appealed to this court, where the appeal was dismissed, and from the order of this court appealed to the Court of Appeals, where the appeal was dismissed. (*Matter of Bickerton*, 196 App. Div. 231; 232 N. Y. 1.) The Court of Appeals wrote an opinion, in which it was held that the order was not appealable to that court, as it was not a final order, and stating that a motion should have been made to confirm the report of the appraisers. Thereafter, the petitioners made a motion to confirm the appraisers' report, which resulted in the order from which this appeal is taken. A part of that order from which the petitioners appeal is as follows: " Ordered that the motion of the petitioners that they be awarded interest on the value as found by the appraisers from the date of the filing of the report of the said appraisers be, and the same hereby is denied."

The General Corporation Law, by section 221, provides, in subdivision 4, for the method of sale of the assets of a corporation, and in that paragraph we find the following: " But no such sale shall be valid as against any stockholder, who, within sixty days after the mailing of notice to him of such sale, shall apply to the Supreme Court in the manner provided by section seventeen of the Stock Corporation Law, for an appraisal of the value of his interest in the assets so sold; unless within thirty days after such appraisal the stockholders consenting to such sale, or some of them, shall pay to such objecting stockholder or deposit for his account, in the manner directed by the court, the amount of such appraisal and upon such payment or deposit the interest of such objecting stockholder shall vest in the person or persons making such payment or deposit."

Section 17 of the Stock Corporation Law, referred to in the above quotation, contains the following: "Rights of non-consenting stockholders on voluntary sale of franchise and property. If any stockholder not voting in favor of such proposed sale or conveyance shall at such meeting, or within twenty days thereafter, object to such sale, and demand payment for his stock, he may, within sixty days after such meeting, apply to the Supreme Court at any Special Term thereof held in the district in which the principal place of business of such corporation is situated, upon eight days' notice to the corporation, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, and designate the time and place of their proceedings as shall be deemed proper, *and also direct the manner in which payment for such stock shall be made to such stockholders.* The court may fill any vacancy in the board of appraisers occurring by refusal or neglect to serve or otherwise."

The report of the appraisers was filed July 15, 1920. Fifteen days thereafter, namely, July 30, 1920, the petitioners would have been in position to enforce payment of the award by taking proper steps. At this time the respondent, having appealed to the Appellate Division on its first appeal, procured a stay and was required as a condition of the stay to give security for $730,000. The award to the petitioners aggregated only $709,988.98. Subsequently on the granting of a further stay on appeal to the Court of Appeals, the respondent was required to deposit an additional sum of $60,000 in cash and when the matter came back from the Court of Appeals a further stay was ordered on condition that respondent continue the deposit in the Empire Trust Company of the sum of $790,000 as it then was, together with a further sum of $20,000.

While the petitioners did not make a motion as promptly as they might have done to confirm the report, they were stayed by these successive stays from proceeding to collect the award, and the only possible purpose of requiring the deposit of the amounts over the amount of the award, would be to cover the interest on the award.

The fact that in order to make the award final it must be confirmed by an order of the court, does not deprive the petitioners of the interest to which they would otherwise be entitled. The statute requiring the payment to be made as specified in the order of the court recognizes that upon the report of the commissioners the sum is sufficiently liquidated to bear interest from the date at which payment was ordered. That date was fifteen days after the filing of the report of the appraisers in the case at bar, and

**154** GARTEN *v.* GENERAL ACCIDENT, F. & L. ASSUR. CORP., LTD.

Fourth Department, June, 1923. [Vol. 206

from that time we think the petitioners were clearly entitled to interest upon the moneys that were due to them. Moreover, this is a fair interpretation of the statute, when we consider the right of a corporation to use property or to sell the property without the permission of these dissenting stockholders, and in the case at bar the property was sold long before the report was confirmed, and the corporation has had the actual benefit of the use of the money paid upon that sale.

Upon the question of interest the equities are entirely with the petitioners, and upon the law the court can well hold that the amount became liquidated so as to bear interest fifteen days after the filing of the report of the appraisers.

The conclusion, therefore, is that upon the appeal of the petitioners the order should be modified so as to grant interest from fifteen days after the filing of the report of the appraisers.

Upon the appeal of the company the order should be modified so as to disallow any sum allowed for plottage over and above ten per cent upon the ground that in making such allowance the appraisers proceeded upon an improper basis because of the allowance for the value of the building made in the report.

As thus modified the order should be affirmed, without costs to either party.

CLARKE, P. J., and MERRELL, J., concur; FINCH, J., concurs in result; MARTIN, J., dissents in part.

MARTIN, J. (dissenting):

I dissent from so much of the modification as strikes out five per cent additional for plottage.

Order modified as indicated in opinion and as modified affirmed, without costs to either party. Settle order on notice.