THE PEOPLE OF THE STATE OF NEW YORK ex rel. FREDERICK LOESER & CO., INC., Appellant, v. HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Respondents.  (Appeal No. 1.)

Taxes of 1922 and 1923, Block 158, Lot 1, and Block 159, Lot 1.

Second Department, April 14, 1927.

Taxation — assessment — valuation of real estate separate from improvements affirmed — valuation should not include " plottage " where land is adequately improved — valuation of buildings affirmed.

Proceedings to review the assessment of certain improved real property located in Brooklyn, N. Y., involved in appeals Nos. 1 and 3. The objection made by relator is as to the valuation of the real estate and not as to the valuation of the improvements thereon. While the valuation seems to be liberal, still, considering the increase in the valuation of real property, it cannot be said that the real property was overvalued. However, the court erred in adding to the valuation ten per cent for " plottage," for it appears that the property is adequately improved by large business buildings. It is improper to add " plottage" to the valuation in view of the location of the property, the character of the improvement, and the fact that the buildings are assessed at what seems to be a liberal valuation and contribute their quota in taxation. Accordingly, the assessments under review are reduced by striking out the added " plottage " value.

In proceedings to review the assessment of certain buildings involved in appeal No. 2, the valuation confirmed by the Special Term should be affirmed, especially in view of the increased cost of labor and materials.

APPEAL by the relator, Frederick Loeser & Co., Inc., from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 13th day of April, 1925, confirming in certiorari proceedings the assessment on relator's lot 1, block 158, section 1, borough of Brooklyn, for the year 1922; also from an order entered in said clerk's office on the same day confirming the assessment on said lot for the year 1923; also from an order entered in said clerk's office on the same day reducing the assessment on relator's lot 1, block 159, section 1, borough of Brooklyn, for the year 1922, and also from an order entered in said clerk's office on the same day reducing the assessment on said lot for the year 1923.

People ex rel. Loeser & Co., Inc., *v.* Goldfogle.  No. 1.  327

App. Div. 326]        Second Department, April, 1927.

*Edward M. Grout* [*Charles B. LaVoe* with him on the brief], for the appellant.

*William H. King* [*George P. Nicholson, Corporation Counsel,* and *Harry S. Lucia* with him on the brief], for the respondents.

Kelly, P. J.  I will also consider, in this opinion, the appeals in *People ex rel. Loeser & Co., Inc.,* v. *Goldfogle, Appeals Nos. 2 & 3* (220 App. Div. 732, 733), argued herewith.

We have appeals from four orders confirming assessments on the real property of the Loeser department store occupying the greater part of the block bounded by Fulton street on the north, Livingston street on the south, Elm place on the west and Bond street on the east.  These properties are described on the assessment maps as block 159, lot 1, and block 158, lot 1.  Included in block 159, lot 1, is an open space twelve and six-tenths feet on Fulton street by sixty-six feet in depth.  This open space is the westerly half of what was formerly Fulton place, running from Fulton street to Livingston street.  It was closed many years ago, but, on the Fulton street end, this westerly half must be kept open. There is also a dispute as to the ownership of the fee, growing out of the fact that the property on the west side of Fulton place, and between that place and Elm place, was not owned by Loeser & Co., nor is it now owned by them.  The balance of block 158 (including the closed portion of Fulton place running back to Livingston street) is owned or leased by Loeser & Co.

In block 159, Loeser & Co. owns the corner of Fulton street and Bond street, but the balance of the block is held under a long lease under which Loeser & Co. pays the taxes.

The assessed valuations under review are:

| Year | Lot | Block | Value real estate unimproved | Value real estate with improvements |
|---|---|---|---|---|
| 1922......... | 1 | 158 | $770,000 | $1,250,000 |
| 1923......... | 1 | 158 | 770,000 | 1,250,000 |
| 1922......... | 1 | 159 | 1,825,000 | 2,400,000 |
| 1923......... | 1 | 159 | 1,825,000 | 2,400,000 |

The contest is over the valuation of the real estate unimproved. No attack is made on the assessment of the buildings.

The relator asked that the aggregate assessment be reduced in block 158 to $1,100,000, and in block 159 to $1,887,500.  Relator's claim was that the assessment on the real estate unimproved was excessive, viz., block 158 to the extent of $150,000, and block 159, $512,500.  At Special Term the writ was dismissed, and the assessment confirmed as to the property in block 158.  As to the property

**328** People ex rel. Loeser & Co., Inc., *v.* Goldfogle. No. 1.

Second Department, April, 1927. [Vol. 220

in block 159, the court reduced the assessment in the sum of $55,000, viz., from $2,400,000 to $2,345,000. The deputy assessor admitted an error in his valuation of the easterly half of Fulton place, and the defendants, respondents, do not appeal.

The above decision is the subject of the appeal in the case at bar.

In *People ex rel. Loeser & Co., Inc.,* v. *Goldfogle, Appeal No. 2* (220 App. Div. 732), the relator seeks reduction of the assessment upon its garage building at the southeast corner of Quincy and Downing streets — 287 feet frontage on Quincy street by 95 feet 7 inches on Downing street. This property is described on the assessment maps as block 1972, lot 2. On that appeal the contest is over the valuation placed upon the buildings for purposes of taxation for the years 1922 and 1923. The buildings were assessed at $144,000 in each year. The relator claims that this was excessive — that the valuation should be reduced to $95,500 in each year. The learned justice at Special Term dismissed the writ and confirmed the assessment in each year. There are two orders and two notices of appeal.

In *People ex rel. Loeser & Co., Inc.,* v. *Goldfogle, Appeal No. 3* (220 App. Div. 733), we have two appeals from orders confirming assessments for 1922 and 1923 on block 165, lot 22. This is the property on the south side of Livingston street across the street from the main store affected by the appeal in No. 1. The property extends from Livingston street to Schermerhorn street — having a frontage of 171 feet and 6 inches on the west side of Bond street, 282 feet on the south side of Livingston street and 290 feet 4 inches on the north side of Schermerhorn street. The easterly half of the property (approximately) is occupied by brick structures, etc., which it is conceded by the relator are not what is generally described as "adequate improvements," but the westerly portion of the plot, described in the evidence as the "westerly half," is occupied by an eight-story warehouse, a five-story building of brick and stone and a two-story building of brick and stone, and the court found "that the westerly half of said property is improved with adequate improvements." The only question involved in this appeal, No. 3, is the value assessed on the land, unimproved. The assessment was $518,000, which relator asked to have reduced to $269,500. The learned Special Term confirmed the assessment in each year. In this case we have the same question as to "plottage" as an element of value, hereinafter referred to in discussing appeal No. 1. As to the easterly half of the parcel, which it is conceded is not adequately improved, the relator concedes that the element of "plottage" may be considered in fixing the value. But as to the westerly one-half found by the court to be adequately improved,

the appellant insists that the value of the property should not be increased by adding ten per cent as a " plottage " value. The amount added for " plottage " on the westerly half of the premises is $23,545.

I want to say at the outset that, in my opinion, there is no necessity for repeating the evidence in these various records. The relator, appellant, called two witnesses, Porter and Small, who gave their opinion as to the value of the property assessed, and the respondents commissioners of taxes likewise called two witnesses, Morrissey and Gaynor, to sustain the valuations made by the assessors. The conclusions of these witnesses are set forth in the points of the parties and present the familiar differences found in all of these assessment cases.

The learned justice at Special Term, who is a resident of Brooklyn, has filed an opinion in which he discusses the evidence in detail and gives his conclusions and the reason for his conclusions in a very clear and satisfactory manner. (See N. Y. L. J. March 6, 1925, CALLAGHAN, J.) As already stated, he confirms the assessments except in the case of the land in Fulton place (discontinued), in which case he makes a reduction of $55,000 because of a conceded error òn the part of the deputy tax commissioner.

In the last analysis we have a finding of fact based upon conflicting evidence. We have the assessment by the taxing officials, with the presumption that it is fair and proper, and we have the finding of the experienced trial justice and his reasons stated in his opinion for his conclusions as to the facts.

I have read over the record and the arguments of counsel. Considering the appeal No. 1, while I think the valuations are quite liberal, on the other hand, considering the marked increase in property values along Fulton street and Livingston street just west of Flatbush avenue, and considering in the case of appeal No. 2 the valuation of the garage building on Downing and Quincy streets, the enormous increase in the cost of labor and materials in recent years — I think this court should not interfere with the conclusions of the learned Special Term. But there is one question in which I am compelled to differ with the Special Term, and that is as to the legality or propriety of adding to the value of the relator's real estate, separate and apart from the buildings and improvements erected thereon and assessed, the element of " plottage.' This question is presented in appeals Nos. 1 and 3. While this court will not interfere with the findings of fact made by the Special Term after hearing the witnesses, where it appears that the assessors adopted an erroneous method in arriving at their valuation it is our duty to correct the error.

330 People ex rel. Loeser & Co., Inc., v. Goldfogle. No. 1.

Second Department, April, 1927. [Vol. 220

As to the main store at Fulton, Bond and Livingston streets, bounded by Elm place on the west, " adequately improved " as found by the judge, and the property on the south side of Livingston street running through to Schermerhorn street, the westerly one-half of which is found to be " adequately improved," as to this land adequately improved, having in mind the location, the character of the improvement, the fact that the buildings are assessed (at a liberal valuation, as I think) and contribute their quota in taxation, I think the addition of an arbitrary sum, ten per cent of the ascertained value of the land because of " plottage," is unjustifiable on the facts and the law.

The learned justice at Special Term gives us his views on the propriety of " plottage " in his opinion. He says: " Whether ' plottage ' should be allowed is a question of fact depending upon circumstances. * * * There is no general custom applicable. * * * It must be determined according to the facts and circumstances in each situation. I think it can be very properly added here without leaving the assessors open to the charge of having made an overvaluation."

I am compelled to disagree with the learned justice. Here we have this land, and for the purposes of the argument I will nöt distinguish between the land held by the relator under lease, and the land owned in fee, occupied by an established business, one of the great department stores of the metropolis, adequately improved, a going concern, the land covered by substantial buildings and structures which are separately assessed for purposes of taxation at the vast aggregate of approximately $1,500,000, and having ascertained a proper valuation of the land apart from the buildings, the taxing authorities arbitrarily add to such valuation ten per cent thereof, " as representing an increased value pertaining to a group of lots by reason of the fact that they admit of a larger and more advantageous disposition or improvement than a single lot." (*People ex rel. Pennsylvania, N. Y. & L. I. R. R. Co.* v. *O'Donnel*, 130 App. Div. 735.)

I do not question that the addition of such an element as adding to the value of real estate may be fair and reasonable in certain cases. Take the case cited — in that case the property as assessed comprised practically four city blocks in the borough of Manhattan, acquired by the relator railroad company for the construction of the present Pennsylvania station. On the day fixed by law as that upon which valuations were to be made for purposes of taxation, the relator had torn down all the buildings on the land in question and had commenced to excavate the ground. It is true that the land had been acquired for the purpose of the terminal

station, the plans for which had been approved by the Rapid Transit Commissioners and by the city authorities. But the terminal building had not been constructed. The assessors found the land in the condition indicated, and Mr. Justice SCOTT, writing for the court in the First Department, held that the element of " plottage " value might be considered in assessing the land. He said the conclusion was " sustained by the opinion of most of the expert witnesses." But I have grave doubt whether, after the permanent terminal station was erected on the land and in full operation, with the substantial increase in the taxable value of the property brought about by such improvement, the assessors in such case would be sustained in adding to the market value of the land, as land, an arbitrary " plottage " value based on the hypothesis that the land could be used for a better or more advantageous purpose. And the same is true concerning the valuation of the New York Theatre property on the east side of Broadway in Manhattan, between Forty-fourth and Forty-fifth streets. (*Matter of Erlanger,* 206 App. Div. 148.) It was shown in that case that because of the peculiar location and shape of the plot the best use of the land in question was to erect thereon an office building on the Broadway front, and two theatres in the rear of the office building on the side streets. All the parties appear to have agreed that an addition of ten per cent for " plottage " value was proper in that case. The dispute was whether it should not have been fifteen per cent. The court disallowed the addition of the extra five per cent in that case and said: " This ' best possible use ' could only occur if the present building were torn down, in which case no value should be or could be allowed for the building. The ' best possible use ' is inconsistent with any substantial allowance for the building." Again, in the *Erlanger Case (supra)* can it be that if the office building had been erected on Broadway with the two theatres in the rear, all of said buildings assessed for purposes of taxation in substantial amounts, the assessors would be justified in adding " plottage " to the value of the land upon which the structures were erected? I doubt it.

There is nothing illegal or unreasonable about the " plottage " value in a proper case — whether it is justifiable or not depends upon the facts presented, the location of the property, the character of the building erected thereupon, the use to which it is put, and possibly other considerations. In the case at bar the relator has erected permanent structures on the properties which are assessed for taxation in an amount between $1,000,000 and $1,500,000. The entire plant — land and structures — is in use in a going, profitable business. It seems to me that an arbitrary addition to the

value of the land on the theory that it might possibly be put to a better use is entirely unreasonable and speculative in the extreme.

In my opinion, the assessments under review should be reduced by striking out this added plottage value.

This is in accord with the decision of the late Mr. Justice GARRETSON sitting at Special Term, Kings county, in *People ex rel. Abrast Realty Co.* v. *Purdy* (decided June 13, 1913). The learned judge filed an opinion in that case which is quoted in the relator's points. The property in that case was the Abraham & Straus department store, on Fulton street, a short distance west of the relator's establishment. The Abraham & Straus premises, like the relator's property, extended from Fulton street to Livingston street and were occupied as a going business establishment. The buildings in that case, like the case at bar, were an " adequate improvement," to use the phrase adopted by the courts in this class of litigation. The assessors added ten per cent to the value of the land as " plottage." Mr. Justice GARRETSON said: " I am of the opinion that when a plot of two or more lots has been substantially and adequately improved, plottage should not be added in determining the market value thereof, and this is in harmony with the evidence in this proceeding." No appeal was taken from the decision. The two cases are, in my opinion, exactly similar. And the same conclusion was arrived at by Mr. Justice BENEDICT in 1923 in *People ex rel. Abrast Realty Co.* v. *Cantor* at Special Term, Kings county (affd., without opinion, 211 App. Div. 870). In this last case the property involved was the large storage building of Abraham & Straus at Boerum place and State street.

For these reasons, I recommend that the orders of the Special Term in the case at bar, appeal No. 1, and also appeal No. 3 be modified by reducing the assessed valuations so as to eliminate the amounts added to the valuations for " plottage." This will require reversal or modification of certain of the findings of fact and conclusions of law by the Special Term. There will be no difficulty in ascertaining the amount of the reductions, and the parties can best prepare the orders, which should be settled upon notice.

As to the other questions involved in the appeals, viz., valuations of the buildings and structures and the valuation on the portion of the abandoned Fulton place which must remain open (*i. e.*, the *cul de sac* on the Fulton street end), and as to the valuation of the buildings at Quincy and Downing streets, the conclusions of the Special Term should be affirmed.

The orders appealed from should be modified in each case by eliminating the amount added to the valuation of relator's land for " plottage " value, and as so modified affirmed, without costs,

Findings of fact and conclusions of law contrary to this decision reversed as contrary to the evidence, and appropriate findings and conclusions made by this court.

MANNING, YOUNG and KAPPER, JJ., concur.

The parties having stipulated in writing that this case may be disposed of by a court of four, the decision is as follows: Orders appealed from modified in each case by eliminating the amount added to valuation of relator's land for " plottage," and as so modified unanimously affirmed, without costs. Findings of fact and conclusions of law contrary to this decision reversed as contrary to the evidence, and appropriate findings and conclusions made by this court. Settle order on notice.